THE STATE v. BILL CAIN, Appellant.

Division Two, February 19, 1913. .

1. **CONTINUANCE: Absent Witness: Diligence of Defendant: Concealed Weapons.** An application for a continuance in a criminal case on account of absence of evidence, must show the facts constituting diligence on the defendant's part.

2. ————: **Discretion of Trial Court.** The question of continuance is largely within the discretion of the trial court and that court's action will not be interfered with unless it appears that there has been an abuse of discretion.

Appeal from Greene Criminal Court.—*Hon. Alfred Page,* Judge.

AFFIRMED

*A. W. Lincoln* for appellant.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State.

ROY, C.—The defendant was convicted of carrying a pistol concealed on his person and sentenced to a year in jail and to pay a fine of one hundred dollars.

Ed Drew was the proprietor of a pool hall which was upstairs over the saloon of Joe Rose in the city of Springfield. Drew had been convicted of keeping a gambling house. There was gambling of some kind going on on the night of the alleged offense. The prosecuting witness, Fred Bateman, and the defendant got into a quarrel over the ownership of a dime which was lying on the billiard table and which had been bet by the defendant in some way. Bitter words and threats passed between them. The proprietor ordered them both out of the hall and they went downstairs. Bateman's evidence was to the effect that the defendant was in his shirtsleeves, and that soon after

going downstairs and while Bateman was near the stairs, the defendant passed on his way back up the steps, and the witness saw about two inches of the pistol in defendant's right-hand trousers pocket. Bateman then went and told police officer Stark that defendant had a pistol with the intention of shooting Bateman.

The evidence for both sides shows that when defendant went upstairs, the proprietor sent him out of the pool hall and down the steps. He was then out on the street fifteen or twenty minutes, going somewhere to see a show, and finding there was no show he returned to the saloon.

The evidence of the two policemen, McClinton and Stark, was to the effect that as defendant was entering the front door of the saloon they were from eight to fifteen feet behind him and following him. When they got through the front door, they found the defendant inside between the front door and the screen, knocking with the pistol on the door of a little side office. They arrested him and took the pistol from him. They testified that the pistol was not visible on the defendant while they were observing him on the street; and that the defendant did not have time after entering the front door of the saloon to pass through the screen into the saloon, get the pistol and return to the point where he was arrested.

The prosecuting witness Bateman was at the time of the trial under parole under conviction for burglary.

The evidence for the defendant was to the effect that when he left the pool hall and went downstairs for the pistol he did so at the request of one Will Simms, who was negotiating for its purchase. The pistol was in the keeping of Joe Rose in the saloon. On that subject the defendant testified as follows: "Will Simms was standing there and I picked up my money. He was in St. Louis running as an extra

Pullman porter and I didn't know his name when it was tried here. He says, 'Will, go down and get that gun if you are going to let me have it.' I went down and got the gun, and he was at the foot of the stairs. He says, 'I can't give fifteen dollars for that gun.' I says, 'I won't take a cent less,' and I turned around and went on upstairs. When I got to the turn of the steps, where the steps turn, I met Mr. Drew. He says, 'Fred Bateman ain't up here. I put him downstairs.' He says, 'What is that you got in your hand?' I says, 'That smoke wagon of mine.' He says, 'Give me that.' I says, 'All right; take it down and give it to Joe Rose.' "

According to the testimony of Drew and the defendant, the pistol was handed to Drew by the defendant to be taken downstairs and given to Rose. When the defendant came back from the street to the saloon, according to the evidence for the defendant, he passed through the screen doors into the saloon, where there were a great many customers; found Drew there, who said to him, "Do you want me to hand him the gun, or do you want to hand it to him?" to which the defendant answered, "I says, 'I will hand it to him.' There were too many people at the bar to hand it over the bar and I walked around to the office door and knocked on it and McClinton grabbed me and the gun too."

Drew and Rose both corroborated the defendant on the point of his getting the pistol from Drew in the saloon for the purpose of turning it over to Rose. The defendant testified that he first got the gun from Rose and went upstairs in order to sell it to Simms. He asked Simms fifteen dollars for the pistol and Simms declined to buy.

Ferd Waddell, a witness for the defendant, had been twice in the penitentiary.

The biography of the defendant as given by himself is as follows:

"Q. How many times have you pleaded guilty and been convicted? A. I think I pleaded guilty once to jumping a train and they got me hooked up once on a license. Q. How many times have you been convicted? A. Two or three times for having little fist fights. Q. What else have you been convicted for? A. A man swore false on me once that I stole a shovel while I didn't. Q. What did they give you? A. A dollars and costs. Q. Never was convicted of a felony? A. What do you call a felony, carrying a gun? Q. Never been in the penitentiary? A. No siree, boss. Never seen but one or two. Q. Ever convicted for stealing? A. Yes, when Roscoe Patterson was prosecuting attorney first. Q. You were convicted for fighting? A. Yes, when a man rolled a firecracker under my dog, for hitting a man, and once got into some trouble with old man West over some watermelons. Q. You never was arrested for stealing chickens? A. No, sir, I go buy them when I want them."

The cross-examination of Rose tended to show that he regarded the defendant as a good customer of his saloon.

Before the beginning of the trial, defendant made application for a continuance on account of the absence of William Simms, alleging that he expected to prove by Simms that he, Simms, was trying to purchase the gun from the defendant on the night of the alleged offense, and that such fact was the reason defendant had the gun in his possession. The only efforts made by defendant to procure the attendance of said Simms so far as the application shows were as follows: "Defendant states that he has made effort to locate the above named William Simms, but has failed to get him, as he is not in the State; that his residence is in St. Louis, Missouri, and that he can be had by the next term of this court. Defendant states that he has used due diligence in trying to lo-

cate William Simms and for him to be present at this trial."

The application for continuance was overruled. The jury were fully instructed on the law of the case, including the question of the presumption of innocence, of reasonable doubt, and of the credibility of the witnesses. No objections or exceptions were made to any of the instructions except the second and third, which were as follows:

"Although you may find and believe from the evidence that the defendant, Bill Cain, at the time and place as alleged in the information, had in his possession a pistol, yet, unless you further find that he had said pistol concealed upon or about his person, you will find the defendant not guilty.

"You are instructed that you are to receive and consider the evidence offered to the effect that the defendant has been convicted of the crime of petit larceny and of fighting and of any other offense which you may find from the evidence the defendant has been convicted, solely as the same may affect his credibility as a witness, and you should not consider such evidence as bearing upon the question of his guilt of the offense for which he is now on trial, nor should you allow such testimony to influence you against him in this case."

There is no error in overruling the application for a continuance. Section 5204, Revised Statutes 1909, provides that the application must show "what diligence, if any, has been used in the premises by the defendant."

Continuance:
Absent Witness:
Diligence.

The application says: "Defendant states that he has used due diligence in trying to locate William Simms and have him present at this trial." That is not a statement showing what diligence was used. The application should show the facts constituting diligence. It is for the court to say whether such facts are sufficient to show due diligence.

The statute does not leave it to the defendant to determine whether he has used due diligence, but does require him to state the facts upon which the court shall decide the matter.   The application does not show when the absent witness left the State, nor does it show whether the defendant knew of his intention to leave the State in time to serve him with a subpoena or to take his deposition.   There ·is no statement that a subpoena was issued for him.   Such an application is insufficient.   [State v. Williams, 170 Mo. · 204.]   Furthermore, the real point at issue on the trial was whether, after going back up into the pool hall with the pistol, the defendant turned it over to Drew and then went out on the street and to the place of the show and back to the saloon without having the pistol, and then went into the saloon, met Drew, procured the pistol from him, and attempted to turn it over to Rose; or whether, as contended for by the State, he had the pistol on him from the time he last left .the pool hall until he returned to the saloon. On that question the evidence which it is claimed the absent witness Simms would furnish would be of little importance.   Whatever motive the defendant may have had for taking the pistol up into the pool hall, whether to sell it to Simms or to shoot Bateman with it, it is conceded that he did take the pistol to the hall.   The controversy as to whether he kept the pistol on his person until his return from the street to the saloon would be very little, if at all, affected by the alleged testimony of Simms.

The question of a continuance is largely within the discretion of a trial court, and the action of the court will not be interfered with unless it appears that there has been an abuse of that discretion.   [State v. Williams, supra, l. c. 207, and cases cited.]

**Discretion of Trial Court.**

We find no error in the record proper nor ·in the submission or exclusion of evidence. The instructions were fair and full and we find no fault with them. Exceptions were taken by the defendant to none of them, except numbers two and three, and those were especially designed to guard and protect the rights of defendant.

As we have not been aided by a brief or oral argument on behalf of defendant, we have carefully examined the whole record and find it free from any errors, and the judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.