## THE STATE v. PHILLIP A. SALTS, Appellant.

**Division Two, January 4, 1915.**

1. **INFORMATION: Prosecuting Attorney's Signature.** Where the body of the information and the affidavit state the official character of the prosecuting attorney, a failure to write the words "prosecuting attorney" after his signature to both the information and affidavit does not invalidate it.

2. **CONTINUANCE: Abuse of Discretion: Things to Be Considered.** An application for a continuance is addressed to the sound discretion of the court, and its denial will be upheld except in case of a clear abuse of that discretion; and the rigid rule prevails that such an application is to receive no favorable intendments, nor is it to be forgotten that defendant had been granted a continuance at a former term of court, nor is the fact to be overlooked that at the trial after the application on account of absent witnesses was overruled defendant's counsel made no attempt by cross-examination of the State's witnesses to show that the absent witnesses had any knowledge of the facts ascribed to them in the application.

3. ———: ———: **Carnal Knowledge: Previous Sexual Relations.** In the prosecution of a defendant charged with carnal knowledge of a female between the ages of fourteen and eighteen years, of previous chaste character, an application for a continuance which states that a certain absent witness would testify that prosecutrix had had sexual intercourse with men prior to the date of the alleged offense should give the names of such men or the reason for omitting them.

4. ———: ———: ———: ———: **Near-by Absent Witness.** Although the application for a continuance says that a certain named man prior to the date of the offense had had sexual intercourse with prosecutrix, a female alleged in the information charging carnal knowledge to be of previous chaste character, and although the evidence at the trial shows he was the only man who had kept company with her, yet if the application also states that said man resided at or near a town just across the county line, and two days elapsed after the application was overruled before the trial began, and when the case was called for trial both sides answered ready and defendant made no further objections to proceeding with the trial after the application was overruled, and made no showing of any diligence or effort during those two days to procure the attendance of the witness, it will not be held on appeal that the court

abused its discretion in overruling the application based on the absence of said witness.

5. **CARNAL KNOWLEDGE: Evidence: Letters.** Letters to the prosecutrix written, after the date of the alleged offense, by defendant, charged with carnal knowledge of her, and relating to the offense charged, are admissible in evidence, though addressed to her in another name.

6. ————: ————: **Affidavit of Prosecutrix's Father.** An affidavit of prosecutrix's father, who did not testify, made after the date of the alleged offense of carnal knowledge, in connection with a charge of incorrigibility, in which he stated her age to be older than her mother testified and that she was a person of immoral character, whose associates were immoral, bad and vicious, is not admissible for any purpose.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*J. J. Crites* and *F. H. Faris* for appellant.

(1) The information is signed "Corrie L. Arthur" with no official designation as prosecuting attorney. The verification thereto does not cure it; the affiant does not make oath, that he, the signer thereof, is prosecuting attorney. The information therefore was not "signed by the prosecuting attorney" as is required by statute, but was void and should have been quashed or the judgment thereunder arrested. R. S. 1909, sec. 5057; R. S. 1909, sec. 5093; State v. Bruce, 77 Mo. 193; State v. Wright, 161 Mo. App. 602. (2) Defendant's application for a continuance was erroneously overruled. It complied in all things with the requirements of Sec. 5204, R. S. 1909. State v. Dewitt, 152 Mo. 76; State v. Newsum, 129 Mo. 154; State v. Klinger, 43 Mo. 127; McKay v. State, 12 Mo. 492. The same diligence is shown in the case at bar as was shown in: State v. Newsum, 129 Mo. 154; State v. Maddox, 117 Mo. 667; State v. Anderson, 96 Mo. 241; State v.

State v. Salts.

Walker, 69 Mo. 274; State v. Wood, 68 Mo. 444; State v. Klinger, 43 Mo. 127. (3) The court was in error in permitting the State, over the objections and exceptions of the defendant, to read to the jury the letters, purported to have been written by the defendant to the prosecuting witness. The letters could only be introduced as being in the nature of confessions or admissions on the part of the defendant, or, that the crime charged being what is termed a "sexual crime," the conduct and relation of the parties after, as well as before the alleged seduction, may be shown. "A confession or admission by a defendant must relate specifically to the matter charged in the indictment." Underhill's Crim. Ev., sec. 290, p. 350; Weaver v. State, 142 Ala. 33; State v. Bennett, 137 Iowa, 427; 35 Cyc. 1355. In neither of the letters introduced is there anything that relates specifically to the seduction of the prosecuting witness, the identical matter charged in the information. (4) The court was in error in excluding the affidavit made by the father of the prosecutrix and filed before Esquire Perry before the arrest of the defendant. This affidavit tended to show the reputation of the prosecutrix, and should have gone to the jury, along with all the other evidence in the case. (5) The evidence in support of the chastity of the prosecuting witness fell far short of the legal requirement. State v. Brandenburg, 118 Mo. 181; State v. Grate, 68 Mo. 22; State v. Brooks, 92 Mo. 608.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

(1) The offense of carnal knowledge is properly charged in the information. Sec. 4472, R. S. 1909; State v. Hall, 164 Mo. 528; State v. Stanley, 232 Mo. 23; State v. Vinson, 171 Mo. 576. Defendant's motion to quash information was properly overruled. The

information states that "Corrie L. Arthur, prosecuting attorney . . . upon .the affidavit of Katie Marks herewith filed; informs the court," etc., but no affidavit was filed with same. However, the information was duly verified by the prosecuting attorney himself. This was sufficient. State v. Clark, 158 Mo. App. 489; State v. Nave, 185 Mo. 125. (2) The evidence was ample to support the verdict and judgment. State v. Day, 188 Mo. 359. (3) The court did not err in admitting testimony of handwriting experts regarding letters claimed to have been written by defendant to prosecutrix. The letters in question contained very strong evidence of the intimate relations existing between prosecutrix and defendant. Prosecutrix had testified that she and defendant had agreed that she should go under the name of "Katie Conlin." The letters were addressed to that name. She testified that they were in defendant's handwriting. The court then admitted them in evidence, to which defendant objected. Later the handwriting experts testified they were in defendant's handwriting. (4) The court did not err in excluding the affidavit made by prosecutrix's father. He did not testify, and the affidavit was not admissible for any purpose. (5) The court did not err in overruling defendant's application for continuance. State v. Cain, 247 Mo. 700; State v. DeVorss, 221 Mo. 469; State v. Sassman, 214 Mo. 695; State v. Crane, 202 Mo. 54; State v. Lynn, 169 Mo. 664; State v. Whitten, 68 Mo. 91; State v. Williams, 170 Mo. 204; State v. Cochran, 147 Mo. 405; State v. Dyer, 139 Mo. 199.

ROY, C.—Defendant was by a jury convicted of carnally knowing Katie Marks who was between the ages of fourteen and eighteen years. His punishment was assessed at a fine of $300 and six months in the county jail.

The information and the affidavit attached, omitting formal parts, are as follows:

> Corrie L. Arthur, Prosecuting Attorney, within and for the county of Phelps and State of Missouri, upon the affidavit of Katie Marks, herewith filed, now here informs the court that on or about the —— day of April, 1913, at and in the county of Phelps, and the State of Missouri, one Phillip A. Salts, a male person over the age of sixteen years, late of the county of Phelps, did then and there unlawfully and feloniously have carnal knowledge of one Katie Marks, an unmarried female of previously chaste character, between the ages of fourteen and eighteen years of age; against the peace and dignity of the State.                                   CORRIE L. ARTHUR.
>
> Corrie L. Arthur, Prosecuting Attorney, as aforesaid, first being duly sworn upon his oath says that the facts contained in the above and foregoing information are true, according to his best knowledge, information and belief.
>
> CORRIE L. ARTHUR.
>
> Sworn to and subscribed before me this 27 day of August, 1913.
>
> (Seal)                       WILL R. ELLIS, Circuit Clerk.

Defendant moved to quash the information for the following reasons:

"Because the information shows upon its face that the same is not filed upon the official oath of the prosecuting attorney of Phelps county or any other officer or body authorized to prefer and make such information.

"Because the averments of said information are insufficient in law to constitute any offense against the laws of the State of Missouri."

At the September term, 1913, the cause was continued on the application of defendant in order to give the defendant time to get public records in the States of Kansas and Nebraska, for the purpose of proving that Katie Marks was over eighteen years of age at the time of the alleged offense.

At the December term, on December 8, the defendant again made application for a continuance on account of the absence of certain witnesses who would testify as follows: Wm. Smith and John Pope would

testify to acts of sexual intercourse between them and prosecutrix; Wm. Kilgore, Jr., would testify that prosecutrix's reputation was bad and that she had intercourse with men prior to April, 1913; Rosa Haas and Gertrude Cooper would testify that Katie and her mother both stated that Katie was over eighteen years of age. The application stated that Will Smith resided at or near the town of Lecoma in Dent county.

The latter application for continuance was overruled on the same day. Two days thereafter, on December 10th, the case was called for trial. Both parties answered ready. The defendant made no further objections to proceeding with the trial.

The prosecutrix testified that she was born in Nebraska, March 4, 1896, and lived there five years, then in Oklahoma five years, then in Kansas five years. She moved with her parents to Rolla in February, 1912. Her mother corroborated her as to her age.

Stephen Marks, Katie's father, conducted a restaurant, and defendant was the proprietor of a second-hand furniture store. In October, 1912, defendant was employed in the Marks restaurant. About March 1, 1913, Marks and defendant both moved to St. James. Marks ran a restaurant, and was half owner of a second-hand furniture store managed by defendant, who owned the other half. Katie worked sometimes in the restaurant and sometimes in the furniture store. She testified that defendant began making improper advances to her before they left Rolla and that near the first of March, 1913, he had sexual intercourse with her, and that she had never had such connection with any other man.

About July 22, 1913, the parents of Katie discovered the relations existing between Katie and the defendant. There was a rupture of their business relations. Marks sold his interest in the furniture store to the defendant. Katie left St. James secretly, on August 1, in company with Viola Conlin, and went to

Festus, Missouri, and corresponded with defendant under the assumed name of Katie Conlin. She testified that defendant gave her ten dollars when she left St. James, and that he sent her two dollars in a letter of August 2nd, and a dollar in a letter of August 5th. The handwriting of those letters was identified as that of defendant by the testimony of Katie and of two bankers. Those letters were read in evidence over the objection of defendant. They are too long for reproduction. They are addressed to "Dear Sweetheart," are full of protestations of devotion. They contain, among other things, the following:

"They have got watches out for 100 miles and it would go hard with all three of us if they catch you and Viola. They are cussing us and telling all over St. James and Rolla they seen us at the very act. . . . For Gods sake Katie be careful and don't get ruined, and I will see to it, you shall not want as long as I can work or have a dollar. Don't worry about your folks as they have branded you as a lying hore and that old Mrs. Hicks is telling you and Kilgore done just as he pleased with you, but I know it is a black lie, but dear be careful. I will send you $2 and then when you answer this, I will send you more, as I can hardly make out the name."

"They told Mrs. Salts I was a bad man, and you was a hore, and they caught us in the act. Mrs. Hicks and Bill Kilgore is talking. Bill says you told him he could do just as he pleased with you, if he would go back on Julia Hicks, and be your fellow, but my dear pet don't think for a minute I will believe anything they say about you sweetheart. I would give 500 to kiss your lips just now. They say they will spend every cent to brake me up, but if they do, I can make more. Don't worry, and I will send you money to hold you up. But you had better stay where you are for a while at least."

State v. Salts.

Three witnesses testified to the good reputation of prosecutrix for chastity. Miss Shaw was connected with the management of the Grant House in Rolla. She testified that Katie worked there about four months and that her reputation at the hotel was all right. Witness did not know how it was at Katie's home. Katie was also in the employ of the Purdy Hotel, and Mr. Purdy testified that he never heard her character discussed.

Harvey Paver testified that he lived just across the street from the Marks home for six months. Didn't know much about Katie's reputation, but said it was good as far as he knew.

At one time Julia Hicks lived just across the street from the Marks family at the home of George Starr. Julia Hicks, it is conceded by both sides, had a bad reputation. She left Starr's home and rented a room in the Marks home, where she lived for several months. She testified that on one occasion in summer she in the company of Will Kilgore, and Katie with Harry Kilgore, went out to the cemetery, and that witness and Will Kilgore sat on the sidewalk while Katie and Harry went into the cemetery and were gone about an hour, getting back after dark. It was common for people to walk in the cemetery. This witness testified that at one time in her room she saw Katie and Will Kilgore lying on the bed, he with one hand under her head and with one arm around her. Witness left the room a few minutes. When she returned Katie was sitting up and Will was lying on the bed. Witness noticed nothing out of the way except as stated.

There was a revival meeting at the courthouse in August, 1912. Mary Medlock testified that she heard loud talking about two o'clock at night in front of the Marks home. She saw two girls there. One looked like Katie. There were three or four men. Asked as to Katie's reputation for chastity, she testified:

"Well, it wasn't very bad and it wasn't very good; they just said they was afraid Katie was lost." On cross-examination, she testified that the remark as to Katie's being "lost" was made by a member of the church during the revival and that witness understood the word "lost" in the religious sense.

George Starr testified that Katie wanted him to meet her at the bridge and he declined. He also testified that she struck herself on the hip and asked him, "How do you like that?" and that he told her that he had a pair of his own. This witness, when asked what men he had ever seen with Katie, said "Bill Smith," and when the names of other men were mentioned, he stated that he had never seen any of them with her. He did testify that one night between eleven and twelve he saw Katie and Julia Hicks on Salem avenue with two men.

William Roach, who gave his occupation as "working around here at first one thing and another," testified that Katie's reputation was bad. On his cross-examination the following occurred: "I heard Billy Sherman talking about her. Q. What did he say about her? A. He was talking about her being up to the Grant House. Q. What did he say about it? A. He was talking about doing business with her and she was sitting on the table and some one running in and catching them and she threw water on them."

Eli Day testified that he invited Katie to take a walk, and that she said, "If you have a dollar, we can go down in the basement;" that they went into the basement, and he got "what she had and I wanted;" that he gave her a dollar. He refused to say what he got. When asked by the court whether his answer would incriminate him, he said that it would not. But he steadfastly refused to say what he got for the dollar.

Defendant offered in evidence the affidavit of Stephen Marks, father of prosecutrix, made on August

6, 1913, which contained the following: "That on or about the —— day of July, 1913, and a long time prior thereto, one Katie Marks, a female between the ages of seven and eighteen years, to-wit, seventeen years old, a person of immoral character, and whose associates are immoral, bad and vicious, and the said Katie Marks, is incorrigible to such an extent that she cannot be controlled by those in whose custody she is." On objection of the State the evidence was excluded.

The father of Katie Marks did not testify, and neither did the defendant.

In the evidence as given at the trial there is no mention of John Pope who was named in the defendant's application for a continuance. That evidence does not show any suspicious conduct between Katie and Will Smith.

Gertrude Cooper testified that Katie Marks told her that she (Katie) was eighteen years old March 4, 1912.

Defendant did not put in evidence any records to prove the age of prosecutrix.

Prosecutrix denied that she walked in the cemetery with Harry Kilgore, or that she was on the bed with Will Kilgore, or that she was in the basement with Eli Day. She testified that she did not know Day. She denied *seriatim* the items of misconduct mentioned by defendant's witnesses. Defendant's witnesses who speak on that subject agree that Katie did not "keep company" with any man but Will Smith.

I. The failure to write the words "Prosecuting Attorney" after the signature of Corrie L. Arthur at the end of the information does not invalidate it. The body of the information states the official character of Corrie L. Arthur. The affidavit also states it. *Quantum sufficit.* [State v. Kinney, 81 Mo. 101.]

**Information.**

II. The question as to the refusal of defendant's application for a continuance is entitled to serious consideration. Such an application is addressed to the sound discretion of the trial court; and its action will be upheld except in case of a clear abuse of that discretion. [State v. Tettaton, 159 Mo. 354; State v. Riddle, 179 Mo. 287.] "Regarding such application the rigid rule prevails that they are to receive no favorable intendments." [State v. Good, 132 Mo. l. c. 127; State v. Blitz, 171 Mo. l. c. 536.]

*Continuance.*

In the Good case it was said (l. c. 130) that it was not to be forgotten that the defendant had been granted a continuance at a former term of the court.

In State v. Temple, 194 Mo. l. c. 252, the court examined the evidence as set out in the application in connection with the evidence given at the trial to determine the question whether there was a probability that the evidence of the absent witness would have affected the result. In that case stress was laid on the fact that defendant's counsel made no attempt to show at the trial by cross-examination of the State's witness that the absent witness was present at the difficulty as alleged in the application.

The evidence as to the previous chaste character of Katie Marks was not very strong, but it is to be considered that she had lived only a short time in Rolla and St. James. The evidence against her character was evidently discredited by the jury. It appears to us to be very inconsistent, contradictory and improbable.

John Pope, who was named in the application as a witness who would testify to his having sexual intercourse with the prosecutrix, is not mentioned in the evidence as given at the trial. Gertrude Cooper appeared and testified that Katie had said she was over eighteen. The application does not state that Will Kilgore would testify that he had sexual intercourse

with Katie. We are not informed what men would be named by him in that connection. The names should have been given or some reason given for omitting them, especially in a second application. The application does state that William Smith would testify that he had carnal knowledge of prosecutrix. The evidence in the case shows that he was the only man who kept company with Katie. It is possible that his testimony would throw much light on the question. If there were no other fact involved we might reverse the case because the defendant was deprived of his testimony. But the application states that Smith resides in Dent county at or near the town of Lecoma. That town is just a short distance across the Phelps county line. Two days elapsed after the application was overruled before the trial of the case began. We do not affirm that answering ready for trial two days after the overruling of the application for a continuance was a waiver of defendant's rights under that application. We do hold that in view of the fact that Smith is presumed to have been at his place of residence, defendant should have diligently used those two days in procuring the attendance of William Smith. What, if any, effort was made in that direction is not shown. How can this court know what the developments were in the case during those two days? They may have been such as to convince counsel for defendant that a speedy trial was best for his client. In State v. Blitz, 171 Mo. 530, an application for a continuance was overruled by the regular judge. A week later the case proceeded to trial before another judge, without a renewal of the application, and without any objection with respect to such application. It was held that defendant had waived any error of the court in overruling the application. We do not express our opinion any broader than to say that, under all the circumstances of this case, the action of the trial court in re-

fusing the continuance does not constitute reversible error.

III.   Counsel for appellant seriously contend that it was error to admit in evidence the letters of the defendant.   It is contended that those letters do

Letters.

not relate specifically to the offense charged against the defendant.   We venture to say that it would be hard to find any other subject to which they do relate.   They are strongly corroborative of the evidence of prosecutrix and were properly admitted in evidence.

IV.   The trial court properly excluded the affidavit of Stephen Marks offered by defendant.   That proposition is too plain for serious discussion.

No point is made on the instructions and we find no fault in them.

The judgment is affirmed.   *Williams, C.*, concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court.   All the judges concur.