THE STATE v. ROY SCHOOLEY, Appellant.—14 S. W. (2d) 628.

Division Two, March 2, 1929.

236

*Verne Lacy* for appellant.

*Stratton Shartel*, Attorney-General, and *A. B. Lovan*, Assistant Attorney-General, for respondent.

BLAIR, P. J.—After a change of venue from Jefferson County, appellant was tried in Wayne County and convicted of the crime of robbery in the first degree. He was jointly charged with others, but was separately tried. The jury assessed his punishment at imprisonment in the state penitentiary for a term of ten years and he has appealed from the judgment entered on said verdict.

At about 11:30 o'clock in the forenoon of Saturday, September 25, 1926, three armed men entered the Citizens Bank of Festus in Jefferson County. One guarded the lobby and overawed the customers, while the other two passed behind the bank counter and compelled the cashier to lie down on the floor while they scooped up several thousand dollars in money and bonds. All three men then left the bank and were driven away rapidly in a waiting automobile.

Roger Elliott was a customer engaged in cashing a check at the cashier's window when the robbers entered the bank. As a witness, he positively identified appellant as the robber who compelled him, at the point of a revolver, to lie down on the floor during the robbery. A Mrs. Moss entered the bank during the progress of the robbery and was detained in the lobby, but refused to lie down on the floor. She testified that appellant was not the man who guarded the lobby. She identified Smith, of whom we shall hear more later, as that man. She was quite thoroughly impeached in this respect by proof of several previous statements inconsistent with her testimony as a witness.

Upon the departure of the robbers, an immediate alarm was given and the officers of adjacent cities were notified and given a description of the robbers and the automobile driven by them. Edward Staat, a deputy sheriff, who operated a garage and sold farm machinery at Antonia, testified that, just after he received telephone advice of the robbery and a description of the automobile used by the robbers, an automobile answering such description passed rapidly through Antonia and he and others pursued that automobile in an automobile belonging to said Staat. They were not certain of the identity of the occupants of the fleeing automobile until a shot was fired by one of the men in the pursuing automobile and the fire was immediately returned by the pursued men. The fleeing automobile was halted temporarily, because of a collision with another automobile, and the pursuers came up close to them before the robbers' car could be extricated and proceed. Staat testified that appellant was one of the men at that point who opened fire on the officers in

the pursuing automobile and held them back until the robbers' automobile could proceed. Staat's identification of appellant at that time and place was definite and positive and on cross-examination was unshaken.

The fleeing automobile then succeeded in getting out of sight of the pursuers and evidently turned off the main highway while so out of view. The pursuers went on until they learned that the fleeing automobile had not passed the point where inquiry was made. Thereupon, they turned back and followed a dim road leading to a club house at House Springs on the bank of Big River. At about half way between the main road and the club house they came upon the automobile which they had been following. It was stalled in the mud. There appellant and one Ball put in an appearance. They came out from the club house to the stalled automobile. Ball opened the door of the automobile and looked in and took out and handed to the officers a box containing bonds, which were afterward shown to be the property of the bank and to have been taken in the robbery. In the subsequent search of the premises adjacent to the club house, a large amount of money ·was found in a sack hidden in the weeds and covered from view. Some revolvers and a shotgun were also found. One of the revolvers was identified as one taken from the bank by the robbers.

There can be no question under the evidence that the automobile found stalled in the mud near the club house was the same automobile which carried the robbers from the bank and which Staat and his companions followed from Antonia. Two or three of the robbers escaped across Big River in a boat which they commandeered.

One F. L. Smith, an ex-convict, was found by the officers in the club house. He was arrested along with appellant, Ball and others. The charge against Smith was disposed of by a *nolle prosequi* during appellant's trial and he testified on behalf of the State. He said that the plan to "pull off a job" was made in the office of appellant in Wellston, St. Louis County, the day before, and that he and appellant and others drove down to the club house from Wellston early in the morning of the robbery, and that he was left at the club house with the understanding that he was to stay there and drive some people back to St. Louis.

Smith further testified that Ball's automobile had become stalled in the mud and that he was trying to get it out when the Nash automobile, carrying appellant and others, came along the road behind Ball's automobile and was likewise stalled in the mud. He said that appellant told him the officers had been shooting at them and that appellant directed him to hide out and lie low. Later appellant told him to go out in the timber and help himself to some money

from a sack hidden there. Before he was able to do this, he saw the officers coming and hid in the club house, where he was afterward discovered.

Appellant offered himself, his wife and the before-mentioned Mrs. Moss as witnesses. He testified that he and Ball and Ball's wife and one Weingartner and his wife drove to the club house the night before the robbery. Weingartner had a lease on the club house from the owner of the land whereon it was built. Appellant said he did not leave the club house or its vicinity until arrested after the robbery. He denied knowledge of, presence at or participation in the robbery, or that he was in the fleeing Nash automobile which carried on a running fire with the officers from Antonia to the vicinity of the club house.

Appellant claimed that Weingartner's lease on the club house was about to expire and that, during the forenoon of the day of the robbery, he walked down the river three or four miles fishing and looking for some other club house location. He said that he talked with some man on that subject and afterwards started back along the highway, where he met a man and his wife traveling in an automobile. He afterward learned their names were Henry and Elizabeth Waldecker, who were at the time in business at 1616 Market Street, St. Louis, Missouri. They had lost their way and appellant gave them directions for reaching their destination. He resumed his walk to the club house and later was picked up in an automobile by one J. P. Neaf and rode with him to a point on the river opposite the club house. He alighted and crossed the river in a boat and reached the club house about noon. He then laid down and rested until he was disturbed by the arrival of the Nash automobile. He denied having met Smith in Wellston the night before or driving out to the club house with him the next morning or leaving him there. In short, he denied knowing Smith at all.

Appellant failed to offer corroboration by any occupant of the club house of his story as to his presence at the club house during Friday night and early Saturday morning or that he returned to the club house about noon and before the arrival of the automobile carrying the robbers. We do not recall reading it in the record, but counsel stated in the argument that House Springs, where the club house was situated, is about thirty miles from Festus, where the robbery occurred. It appears in the evidence that all the people found at the club house were placed under arrest later in the afternoon. The information named Smith, Ball and Weingartner, among others, as co-defendants with appellant. This fact may explain appellant's failure to call even the wives of Ball and Weingartner as witnesses in attempted support of his alibi.

Neither Neaf, Henry Waldecker nor his wife was produced as a witness to support appellant's alibi. He did not even issue a subpœna for them. A continuance was asked on account of their absence and the refusal thereof is one of the errors assigned. Appellant neither disclosed the identity of the man he said he talked to during the forenoon of the robbery about leasing a club house, nor in any wise accounted for his failure to produce him as a witness in support of his alibi.

The rebuttal proof of the State consisted of testimony tending to impeach Mrs. Moss's identification of Smith, rather than appellant, as the robber who guarded the lobby of the bank during the robbery, and the testimony of Emil Boemler, the owner of the club house, to the effect that appellant was not in the automobile with Ball and Weingartner and their wives the evening before the robbery, when they stopped at his place of business.

Insufficiency of evidence to support the conviction was urged in the motion for new trial, but the contention has not been renewed here. It is manifest that the judgment cannot be disturbed for want of sufficient evidence to support the verdict.

The first assignment is that the trial court erred in overruling appellant's motions for continuance. One motion related to the absence of Henry Waldecker, and his wife, whom appellant testified he had met and talked with during the forenoon of the robbery. The other motion for continuance was based on the absence of J. P. Neaf, with whom appellant said he rode to a point near the club house after his alleged conversation with the Waldeckers. Both motions set forth the facts which appellant expected to be able to prove by said absent witnesses. Such alleged testimony would have been very material, if true, because it would have tended to support appellant's alibi and would not have been cumulative of testimony offered by witnesses other than appellant.

The only showing of diligence to procure the testimony of the Waldeckers, said to be then living at 301 Broad Street, Hammond, Indiana, was the allegation: "That your affiant has made due diligence to procure these witnesses for trial, but so recently, to-wit, the 6th day of June, learned of their address and whereabouts; they having formerly operated a place of business at 1616 Market Street in the city of St. Louis, Missouri, the last known address before the one just recently ascertained in Indiana, and that by reason of the delicate and pregnant condition of Elizabeth Waldecker and the period of gestation having progressed to such an extent that birth is expected at any time, the witnesses, who are husband and wife, refuse at this time to attend this Honorable Court and refuse at this time to undergo the ordeal to submitting to examination in depositions, but that both witnesses have assured your affiant that they

will appear at the next term of this court and testify in his behalf." The allegation that appellant used due diligence is a mere conclusion. No facts are stated from which the trial court or this court could determine for itself whether or not diligence was actually employed by appellant. It does not appear when such witness left St. Louis or what inquiries were made by appellant of their former neighbors and friends to ascertain their whereabouts earlier than the 6th of June.

The Neaf motion alleged that Neaf had promised appellant to attend the trial, without requiring a subpœna to be served upon him, and that Neaf had been called out of the State for a conference with the officers of the Rock Island Railroad, by whom he was employed, and that he would be away from St. Louis eight or ten days. No subpœna was issued for said witness.

Appellant was at large upon bond from the time of his arrest and certainly had an opportunity to investigate the Waldecker witnesses, if, in good faith, he wanted their testimony. His failure to exercise diligence as to witness Neaf is manifest. Appellant was arrested September 25, 1926. The original information against him was filed in November following and the amended information in January, 1927. His trial occurred the middle of the following June. If his own testimony was true, he knew about these witnesses on the day of his arrest. As appellant was a lawyer, he must have realized fully at the very moment of his arrest that the testimony of the three witnesses named in the motions for continuance would be of vital importance to his defense and, if believed by the jury, would undoubtedly have resulted in his acquittal.

Yet appellant waited until the very day of the trial and until after he had exhausted recourse to all available tactics to delay the trial, by special and general demurrers to the amended information and by plea in abatement, before filing his motion for continuance based upon the absence of the Waldeckers and, when that motion had been overruled, filed his separate motion for continuance based on the absence of Neaf. Such tactics very strongly indicate want of candor on appellant's part and suggest that he was holding back the Neaf motion for the purpose of procuring a continuance at a later setting of the case, had postponement of the trial then been secured by virtue of the Waldecker motion.

In view of the failure of appellant to show proper diligence to locate the Waldeckers within a reasonable time after his arrest and to compel the attendance of Neaf by subpœna, the question of granting a continuance was largely in the sound discretion of the trial court and, in the absence of any showing of an improper exercise of such discretion in overruling said motions, this court will not convict that court of error in such rulings. [State v. Wilson (Mo.

Sup.), 242 S. W. 886, l. c. 887 (citing State v. Burgess (Mo. Sup.), 193 S. W. 821; State v. Salts, 263 Mo. 304, 172 S. W. 373; State v. McWilliams, 267 Mo. 437, 184 S. W. 96; State v. Webber, 272 Mo. 475, 199 S. W. 147; State v. Cain, 247 Mo. 700, l. c. 705, 153 S. W. 1039, which fully support the rule announced in the Wilson case) ; 16 C. J. 451.]

The cases cited by appellant fully recognize the rule that the granting or refusal of a continuance in a criminal case is largely within the discretion of the trial court, with which an appellate court will not interfere in the absence of a showing of abuse of such discretion. In none of the cases cited by appellant, where the refusal of a continuance was held to be error, was there a showing of as little diligence as was shown by appellant in the case at bar. The assignment is overruled.

Appellant complains of the admission in evidence of weapons found near the club house soon after the officers arrived there. 16 Corpus Juris 619, Section 1225, is cited in support of the assignment. We think their admission in evidence was entirely proper. The robbers had weapons while in the bank and used them in their flight. Witness Staat said that appellant used a revolver during said flight. Smith testified that he saw one of the men who arrived at the club house in the Nash automobile have two revolvers. One of the revolvers offered in evidence was identified as one taken from the bank during the robbery. Its finding, with others, near where the robbers' automobile stalled soon after it was taken from the bank, was a circumstance of great probative value, linking the stalled automobile and its occupants with the bank robbers. The contention is without merit.

Error is assigned because of alleged want of jurisdiction of the trial court to authorize it to enter a *nolle* as to defendant F. L. Smith, so as to qualify him as a witness against appellant. It appears that defendants Ball and Weingartner were granted severance and that appellant was granted a separate change of venue from Jefferson County, which operated as a severance. The case as to defendant Smith remained in the Circuit Court of Jefferson County until about a month before plaintiff's trial, when it was transferred to the Wayne County Circuit Court by agreement between defendant Smith and the Prosecuting Attorney of Jefferson County. The contention is that the Wayne County Circuit Court, by such agreed transfer, acquired no jurisdiction over the case as to Smith and could not dismiss the case as to him in that court because jurisdiction could not be lodged there upon a mere agreement.

A defendant in a criminal case can stipulate for a change of venue to another jurisdiction. [State v. Taylor, 132 Mo. 282, l. c. 287, 33

244

S. W. 1145; State v. Nave, 185 Mo. 125, l. c. 134 and 135, 84 S. W. 1.] Having secured jurisdiction by such agreed transfer of the case as to Smith, the Wayne County Circuit Court had jurisdiction of the case for all purposes, including the power to enter a *nolle prose-qui.*

Error is predicated upon the action of the trial court in permitting the State to use said Smith as a witness, when his name was not indorsed upon the information, as required by Section 3889, Revised Statutes 1919. Section 4035, Revised Statutes 1919, authorizes the court "at any time before the defendants  have gone into their defense" to discharge a defendant to enable the State to use him as a witness against his co-defendant, when two or more persons are jointly indicted. Use by the State of a co-defendant as a witness, under said Section 4035, is not dependent upon compliance with Section 3889 and the name of such co-defendant witness need not be indorsed upon the information or indictment. Nor does it appear how knowledge by the prosecuting attorney in advance of the trial that the testimony of a co-defendant will be available to the State at the trial should require the indorsement of the name of such co-defendant upon the indictment or information before or during the trial. The discharge of Smith occurred after the trial begun and before appellant had gone into his defense. The requirements of Section 4035 were thus fully met. The assignment is without merit.

Complaint is made because the Prosecuting Attorney of Jefferson County, Mr. McCormack, was permitted to testify without his name being indorsed on the information. The information charged that appellant, "John Doe," and others committed the robbery. The witness testified only to the fact that John Doe was a fictitious name used because he did not know the real name of the person intended to be charged thereby and that said John Doe was intended for the defendant, afterwards found to be Harry Huffendieck. How appellant's defense could possibly have been prejudiced by this bit of evidence is utterly beyond our comprehension. The complaint is without substantial merit.

Another assignment in appellant's brief is that "the court erred in failing to reprimand the Special Prosecutor, Terry, for the remark made in the presence and hearing of the jury, wherein he stated that he withdrew the question because he did not want 'reversible error' in the case."

Appellant has failed to indicate the place in the record where the incident occurred; but the learned Attorney-General found it after a search and has pointed it out in his brief. The trial court directed the jury to pay no attention to the remark of counsel, thus sustaining

appellant's objection, and to that extent reprimanded counsel. The exception saved by appellant was to the remarks of counsel to which the court had sustained his objection, and not to the failure of the court to administer an appropriate and adequate reprimand. There is, therefore, no basis in the record for this assignment of error.

By his Assignments VIII and IX appellant attacks the amended information, upon which the case was tried, as being duplicitous and as charging more than one criminal offense at different times in one and the same count and that thus appellant was denied due process of law. The information was unsuccessfully attacked in this respect by special demurrer before trial.

The assignment rests upon the untenable premise that the information charged more than one offense. It is unnecessary to set it out in full. In substance, it charged, in the usual and approved form, the crime of robbery of the cashier of the bank by force and violence and by putting him in fear and that "Roy Schooley, John Doe, Richard Roe and Henry Roe" (Doe and the Roes being fictitious names used because the true names of the defendants were unknown) committed the robbery and that F. L. Smith, Francis T. Ball and Fred Weingartner were then and there inciting, moving, procuring, aiding, counseling and commanding appellant and Doe and the Roes to commit said robbery. Said information concluded with the formal charge that all of the defendants named as principals in the first degree and as accessories before the fact committed the crime of robbery "aforesaid."

The information as thus drawn charged only one crime and was not subject to the infirmity claimed by appellant. [State v. Granger, 203 Mo. 586, 102 S. W. 498; State v. Stacy, 103 Mo. 11, 15 S. W. 147.] All of the defendants named in the information could have been charged as principals in the first degree. [Sec. 3687, R. S. 1919.] Defendants Smith, Ball and Weingartner could have been charged and tried as principals, even though they were actually accessories before the fact at common law. [State v. Roderman, 297 Mo. 143, l. c. 148, 248 S. W. 964.]

The cases cited by appellant are those condemning indictments and informations charging more than one offense in the same count. That rule of law is not questioned. They are not authorities for appellant's contention that the information at bar charges two different criminal offenses in one count. This assignment also must be overruled.

Assignment X in appellant's brief is that "the court erred in failing to discharge the defendant Schooley at the close of the State's

case when it appeared on the trial that Harry Huffendieck, described in the indictment as John Doe, was known to the Prosecuting Attorney, George V. McCormack, and he should have been so described and named by his name of Harry Huffendieck and his identity not concealed by the Prosecuting Attorney from the defendant under the name of John Doe."

Without considering the merits of the contention, one simple and all-sufficient answer to it is that the record covering the testimony of Mr. McCormack shows that no request for the discharge of the appellant on such ground was made in the trial court. The objections made were that the witness should not be allowed to testify because his name had not been indorsed on the information and because "he can't substitute a name for one of these fictitious names," and because the evidence would be based upon hearsay. The judgment of the trial court cannot be reversed for its failure to make a ruling or order which it was not even requested to make.

The foregoing comprise all the assignments of error urged here in the brief of able counsel. Other assignments, made in the motion for new trial and not renewed here, have been examined and found to be without merit. The information properly and sufficiently charged appellant with the crime of robbery in the first degree. The verdict was in proper form and responsive to the charge made in the information and fully authorized the judgment entered thereon in due form, after according to appellant all his legal rights, as provided by law.

Said judgment is accordingly affirmed. All concur.