State v. Hibler.

THE STATE v. HIBLER, Appellant.

*Division Two, May 9, 1899.*

1. **Criminal Practice**: REMARKS OF PROSECUTING ATTORNEY. In order to justify a reversal of a judgment in a criminal case because of improper remarks by an attorney for the State, it should appear to the court that the remarks complained of were prejudicial to defendant, and probably had something to do in bringing about the verdict reached by the jury.

2. **Rape**: SUFFICIENCY OF EVIDENCE. Where the defendant is clearly guilty of rape if the prosecutrix testified truthfully, and the defendant testifies but does not deny having had connection with her, and did not deny having forcibly ravished her when charged with the offense by her mother in her presence, the jury being the judges of the weight of the evidence and their verdict having been approved by the trial judge, this court will not interfere.

3.. Criminal Practice : INSTRUCTION: SINGLING OUT FACTS.  An instruction should not single out specific facts in such a way as to give them undue prominence, but if any fact is mentioned then all the facts involved in the issues of the case should be mentioned, so as to give them the same importance, and thereby make the instruction cover the entire case.

*Appeal from Chariton Circuit Court.*—HON. W. W. RUCKER, Judge.

AFFIRMED.

DEMPSEY & O'SHAUGHNESSY for appellant.

(1)  The remarks of the assistant counsel on the part of the State, were outside of the record, a personal attack on the defendant, highly prejudicial, and warrants this court in reversing the judgment.   State v. Young, 99 Mo. 683; State v. Jackson, 95 Mo. 653; State v. Ulrich, 110 Mo. 365; State v. Warford, 106 Mo. 65; State v. Fairlamb, 121 Mo. 150.   (2)  The evidence was insufficient to support the verdict.   There was a failure in the evidence to show rape, and defendant should be discharged.   State v. Patrick, 107 Mo. 147; State v. Burgdorf, 53 Mo. 65; State v. Perkins, 11 Mo. App. 182; State v. Wilson, 91 Mo. 413; Brown v. People, 36 Mich. 203; People v. Mayes, 66 Cal. 597; People v. Dohring, 59 N. Y. 374; Matthews v. State, 19 Neb. 330; Underhill on Crim. Ev., sec. 415; Shirwin v. People, 69 Ill. 55; Hall v. People, 47 Mich. 636.   (3)  The State's third instruction should not have been given because it assumes an assault, singles out parts of the evidence and calls special attention thereto, comments on the evidence and takes a vital issue from the jury, which was highly prejudicial to the defendant and reversible error.   McFadin v. Catron, 120 Mo. 274; State v. Fairlamb, 121 Mo. 148; State v. Sivils, 105 Mo. 533; State ex rel. v. Straszer, 9 Mo. App. 583; State v. Hicox, 83 Mo. 538; State v. Wheeler, 79 Mo. 366; Fullerton v. Fordyce, 121 Mo. 13; Mathews v. Railroad, 26 Mo.

App. 89; Noyes, Norman & Co. v. Cunningham, 51 Mo. App. 198; Railroad v. St. Louis Union Stock Yards, 120 Mo. 558; Copp v. Hardy, 32 Mo. App. 593; Chancy v. Ins. Co., 62 Mo. App. 49; State v. Castor, 93 Mo. 248; State v. Peyton, 12 Mo. App. 568; State v. Sands, 77 Mo. 119; State v. Irwin, 80 Mo. 250.    (4)   The testimony of the prosecutrix is incredible in itself, uncorroborated by the physical evidence, contradicted in part by several witnesses, and will not sustain the conviction of the defendant.   State v. Patrick, 107 Mo. 147; State v. Marcks, 140 Mo. 674.    (5)   The verdict of the jury was the result of passion and prejudice against the defendant, and wholly unsupported by the evidence and should not stand.    State v. Hunt, 91 Mo. 490; State v. Primm, 98 Mo. 372; State v. Mansfield, 41 Mo. 474; State v. Leach, 50 Mo. 535; State v. Marshall, 47 Mo. 381; State v. Packwood, 26 Mo. 364; State v. Thornton, 1 Mo. App. 93; State v. Peyton, 12 Mo. App. 568; State v. Irwin, 80 Mo. 250.

EDWARD C. CROW, Attorney-General, and SAM B. JEFFRIES, Assistant Attorney-General, for the State.

(1)   Defendant was accorded every consideration warranted him by law, even though not asked by him.    It is charged that the verdict was the result of prejudice and passion against the defendant on the part of the jury, but no such prejudice or passion was manifested so far as is shown by the record.   In order to avail himself of such an objection it must appear that prejudice and passion existed.   (2) Nor can it be successfully asserted that the evidence was insufficient to warrant the verdict found.   On the other hand the evidence is ample.   (3)   The verdict of the jury will not be overthrown unless there is no evidence showing guilt.   In this case there is ample testimony, which corroborates that of the prosecutrix, and although it is denied by defendant, this court will adhere to the finding of the jury and the

discretion and judgment of the trial court in overruling the motion for new trial.   (4)   It can not be either said or held that defendant was in any way injured or his case prejudiced on account of the remarks of the attorney, Judge Smith. Indeed, this court would not be warranted in reversing the case on that account.   State v. Summar, 143 Mo. 221.

BURGESS, J.—At the July term, 1898, of the circuit court of Chariton county, defendant was convicted of rape alleged to have been committed on one Imogene Sublett at said county on the twelfth day of June, 1898, and his punishment fixed at five years' imprisonment in the penitentiary.

He appeals.

The defendant and Imogene Sublett were about the same age—twenty years—lived about three quarters of a mile apart, and had attended the same school.   The families of which they are members were upon intimate terms, and the younger members, especially, exchanged visits.   Defendant had never called upon Imogene but once, however, before the evening of June 12, 1898.   In pursuance of an arrangement of two weeks standing, she in company with the defendant left her home in a two horse buggy on the evening of that day, to go to Zion Church, about three and one-half miles distant to attend "Children's Exercises."   They were late getting there, and when they did arrive the exercises had begun and the church was crowded, so being unable to get seats they started back home.   She testified that when they left the church, two other buggies turned around and left also, traveling the same road, one going east in front of them for a mile until they came to a cross road when they turned north, while the buggy in front continued eastward; that as soon as they turned north, defendant put his arm in back of her, and when she requested him to remove it he refused but talked about the lascivious conduct of other girls.

She requested him several times to "shut his mouth" but he persisted in his unseemly talk and conduct, and when she told him if he did not desist that she would jump out of the buggy he told her if she did he would get out also.   When they were within three-quarters of a mile of her house he stopped his team and assaulted her, whereupon she started to get out of the buggy, but he threw his arms around her and pulled her back.     Some one was then heard to be approaching in the rear, which startled defendant and caused him to drive on up to and past the Sublett residence about three-fourths of a mile across Salt creek and South Branch bridge where he stopped again.    She screamed and tried to get away from him.    Hearing another buggy coming, he started the team and drove into a field about three-fourths of a mile away, where he stopped his team for a third time and continued his assault upon her.    She screamed, fought and resisted as best she could, but he  succeeded in accomplishing his purpose. While on the way home she told him he had just as well kill her and throw her in the ditch.    He told her if she would not say anything about it he would marry her.  She replied: "No, I won't do it, narry a time."

She was not out of the buggy from the time they started to the church until they returned to the Sublett home about eleven o'clock that night and was on the seat all the time.

When she reached home all the members of the family had retired except her sister Dollie.   She was excited and had been crying.    Her sister tried to get her to tell what was the matter with her, but she told her that she would not do so that night but would do so in the morning.   She slept none that night but cried continuously.   Her hat and clothing were badly soiled, her underclothing torn and bloody, her private parts lacerated, and her person sore so that she could not do anything for about a week.

The next morning early after the assault she told her mother and sister how she had been treated by defendant the

right before. She did not at that time tell her father, for fear that he would kill defendant and get into trouble over it, nor did he learn of it for about a week, and a few days thereafter a warrant was issued for defendant and his arrest followed on June 21, 1898.

Defendant in response to a note written to him by Imogene at the command of her mother called at Sublett's on Thursday evening after the offense is alleged to have been committed, and when charged by Mrs. Sublett in the presence of Imogene with the crime did not deny it, but begged her to say nothing about it, and said they would marry that fall.

Defendant testified as a witness in his own behalf, and stated that as they were on their way home some one in a buggy followed close behind them. That when they reached the Sublett home they thought best to drive on as they did not want to be recognized by the person in the buggy behind them. After driving on some distance across a small stream known as Salt creek to a point beyond where the road crossed another into which the party in the rear turned, they started back home. On reaching the Sublett home, the prosecutrix got out of the buggy and went into the house; while defendant went on to his home. While at the Sublett residence Charles Sublett, a brother to the prosecutrix, came out, got in the buggy with defendant and rode with him to the next cross road. He did not deny that he had carnal intercourse with Imogene Sublett, but denied that he raped her. Thomas Vaughn, a witness for defendant, testified that he attended the exercises at Zion Church the night of June 12, 1898, and that on his way home he caught up with a buggy as they were near the Sublett place, and that there was also a buggy following close behind him, but did not state who the occupants of either of the buggies were.

The road was a public road and traveled a great deal, and on or near that part of it over which defendant traveled that night after leaving the church and before returning to the

Sublett home there were several residences which were occupied, but none of the occupants or any other person seems to have heard the cries of the prosecutrix.

1.    In his argument to the jury one of the counsel for the State made use of language which defendant insists was outside of the record, a personal attack upon and prejudicial to him, and for which the judgment should be reversed.    It is true that the language complained of was somewhat harsh, but not so much so we think as that which was used in State v. Summar, 143 Mo. 220, and which was held not to justify a reversal of the judgment in that case.    While counsel in their arguments before juries should confine them to the facts disclosed by the evidence, and never indulge in personal abuse of the defendant on trial in a criminal case, it is not every divergence from this course that will justify the reversal of the judgment.    But in order to justify such a result it should appear to the court that the remarks complained of were prejudicial to defendant, and probably had something to do in bringing about the conclusion reached by the jury, and such we think was not this case.

2.    It is next insisted that the evidence was insufficient to authorize the verdict.    To this contention we can not agree. If the prosecuting witness, Imogene Sublett, testified truthfully there is no escape from the conclusion that defendant forcibly ravished her.    It is true that he testified that he did not rape her, that she did not halloo, but he did not deny having connection with her, nor did he deny having committed the offense when charged with it by the mother of the girl in her presence.    Of the weight of the evidence the jury were the sole judges and they having found defendant guilty, and their verdict having been approved by the trial court, this court will not interfere.    This rule has been so often announced by this court that it is not thought necessary to cite authorities upon the question.

3.    The third instruction given on the part of the State

is criticised upon the ground that it assumes that defendant assaulted Imogene Sublett, singles out parts of the evidence, calls especial attention thereto, and comments on the evidence.

It is as follows: "In determining whether or not the defendant assaulted the prosecuting witness as charged in the indictment, and whether he actually had sexual intercourse with her as alleged, and whether such sexual intercourse, if had; was consented to by the prosecuting witness, or whether she resisted such assault with all the ability she had to make resistance, you should take into consideration the relative size and strength of the parties; the time and place of making the alleged assault; the ability or inability of the prosecutrix to successfully resist such assault; the effort made by the prosecutrix, if any, to alarm the neighbors and bring help to her rescue; the distressed and excited condition of the girl's mind when she arrived home soon thereafter, if you find she was so distressed and excited; the fact that she disclosed to her mother and sister the assault made upon her soon thereafter, if you find she so made such disclosure; the condition of her clothing upon her arrival home, as well as all the other facts and circumstances disclosed by the evidence in the case."

The instruction does not we think assume that an assault was committed nor is it a comment on the evidence.    It does, however, call the attention of the jury to special facts together with all other facts and circumstances disclosed by the evidence in the case.    But by it the facts are particularized which were the weak points in the State's case and chiefly relied upon by the defense, namely the size and strength of the parties; that the offense if committed was while the parties were in a buggy and the prosecuting witness on the buggy seat; that she hallooed as loud as she could at the several places where the assault was attempted and finally accomplished, and was not heard, although within hearing distance of different persons; and the further fact that she did not

·complain to any one of the treatment of her by defendant until the next morning thereafter, all of which were circumstances tending to show that she was not raped, hence we think the instruction more in favor of defendant than against him. The same view seems to have been taken by defendant at the time of the trial, as by the seventh instruction given at his request, the jury were instructed that if the prosecuting witness made no complaint and did not as soon as opportunity afforded after the offense was committed complain of the offense to others but concealed it for any considerable length of time thereafter; and, by the ninth, that unless she made an outcry at the time of the sexual intercourse, they would take these facts into consideration in determining the guilt or innocence of the defendant, thus calling attention to the want of action on the part of the prosecuting witness with respect to matters material to the defense, while at the same time complaining of the State's instruction because it does the same thing.

While we do not wish to be understood as approving the State's third instruction—we are not inclined under the circumstances to reverse the judgment on account of it alone. It may not, however, be out of place to say, that an instruction should not single out specific facts in such a way as to give them undue prominence but if any fact is mentioned then all the facts involved in the issues in the case should be mentioned, so as to give them the same importance and thereby make the instruction cover the whole case.

4. The next contention is that the testimony of the prosecuting witness is incredible in itself, uncorroborated by the physical facts, and insufficient to sustain the verdict, but there is nothing disclosed by the record which justifies this criticism. The weight of the testimony was for the consideration of the jury, and if the prosecuting witness testified to the truth, and they must have believed that she did, defendant is guilty as charged. It can not be said that there

was no substantial evidence of defendant's guilt, and it is only in such circumstances that this court will interfere.

5.   There is no ground for the assertion that the verdict of the jury was the result of passion or prejudice or that it is not supported by substantial evidence.

Finding no reversible error in the record we affirm the judgment.   GANTT, P. J., and SHERWOOD, J., concur.