## THE STATE v. JOE TRACY, Appellant.

### Division Two, June 8, 1922.

1. **CONTINUANCE: Absence of Witnesses: Cumulative Evidence.** In a prosecution for burglary and larceny where defendant's application for a continuance had been overruled and the case set for trial and defendant failed to appear and his recognizance was forfeited and thereafter the case was again set for trial and had been pending eight months and defendant again filed his application for a continuance on the ground of absence of witnesses and it appeared from such application that the testimony of such witnesses would have been simply cumulative, the trial court did not abuse its discretion in refusing such continuance, and the application was therefore properly overruled.

2. **EVIDENCE: Identifying Stolen Property.** In a prosecution for burglary of a bonded warehouse and the larceny of seventeen barrels of whiskey therein, which were found in a house where defendant was arrested, there was no error in permitting the

State v. Tracy.

United States Government store-keeper and gauger, assigned to said warehouse, to testify to the identity of said barrels by means of the numbers, marks and brands on them, without the production of the record of them from the Internal Revenue office or a copy of such record, where the witness did not use such record or copy to refresh his recollection, but testified independently thereof as to such identity, the weight of his testimony being for the jury.

3. ——: ——: Weapons and Stolen Property in House Where Defendant was Arrested. The admission of evidence that guns and revolvers were found in the house where defendant and one jointly indicted with him were arrested and that seventeen barrels of whiskey were found in the basement of such house, without showing defendant owned or controlled such house or had any connection with such weapons or whiskey, was not error, where there was direct and positive evidence that defendant and his companion took part in the burglary and larceny for which they were indicted and were armed at the time with guns and that four other men participating with them were armed with revolvers and that the house was watched for two days after their arrest and no one else, except defendant and his companion, were found there, it thereby sufficiently appearing that they were in exclusive possession of such premises.

4. ——: Self-Serving Statements. Where defendant was on trial for burglary and larceny and his defense was an alibi, the conversations had by him with his witnesses who testified that he was at another place at the time of the burglary were no part of the *res gestae*, but mere self-serving statements, and properly excluded.

5. INSTRUCTIONS: Recent Possession of Stolen Property: Presumptions. It was error for the trial court to give an instruction, in the general form heretofore used in this State, as to the legal presumption of guilt arising from the possession of recently stolen property, and such error is presumed to be prejudicial and is therefore reversible in view of there being substantial evidence for defendant tending to prove an alibi, notwithstanding there was direct and positive evidence of defendant's complicity in the burglary and larceny, for which he was being prosecuted. [Following State v. Swarens, 294 Mo. 139.]

6. ——: Refused Covered by Those Given. Where the defense of alibi was covered by the instructions given for the State, there was no error in refusing those asked by the defendant in reference to that defense.

7. DEMURRER: To Evidence. There being direct and positive evidence of defendant's participation in the burglary and larceny for

which he was being prosecuted, his demurrer to the evidence at the close of all the evidence was properly overruled.

8. **INSTRUCTION**: Assumed Ownership of Stolen Property: Immaterial Variance. Where testimony was given that the title to the ground on which a bonded warehouse stood and the stocks of whiskey therein was in the name of Blue Valley Distillery Company, but that the S. Hirsch Distillery Company owned all the stock of the Blue Valley Distillery Company, and the companies had the same officers and were the same, it was not prejudicial error, but an immaterial variance, for the trial court to instruct the jury that the title to the whiskey was in the Blue Valley Distillery Company.

9. **BURGLARY AND LARCENY**: Indictment: Verdict. The indictment in this case which jointly charged the defendant and another, in the same count, with burglary and larceny, was authorized by Section 3305, Revised Statutes 1919, where both offenses were committed at the same time, and conformed to the statute and clearly and distinctly charged the commission of both felonies, and the verdict found the defendant guilty of each offense and was in proper form. ,

10. **ARGUMENT TO JURY.** In order to justify a reversal of a judgment for improper argument, it must appear that the remarks of counsel were prejudicial and probably had something to do in bringing about the conclusion reached by the jury, and that was not true in this case.

Appeal from Jackson Criminal Court.—*Hon. E. E. Porterfield,* Judge.

REVERSED AND REMANDED.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Special Assistant Attorney-General, for respondent.

(1) The indictment is sufficient. Sec. 3305, R. S. 1919; State v. Helms, 179 Mo. 282; State v. Pearson, 234 Mo 264. (2) An application for a continuance is addressed to the sound discretion of the court, with the exercise of which this court will not interfere, unless it clearly appears from all the facts and circumstances that such discretion has been abused to the prejudice of de-

fendant. State v. Cain, 247 Mo. 705; State v. Salts, 263 Mo. 314; State v. Yeager, 209 S. W. 884. It is not reversible error to refuse a continuance if the evidence desired from an absent witness is merely cumulative. The application for a continuance herein shows that the desired evidence is cumulative only. State v. Riddle, 179 Mo. 294-5; State v. Horn, 209 Mo. 462; State v. Sassaman, 214 Mo. 734. (3) Appellant complains of the admission of testimony of R. J. McNutt as being incompetent to identify the stolen barrels of whiskey. A careful reading of his testimony shows it to be entirely competent. All the barrels in the warehouse had burned thereon the name, "Blue Valley Distillery, No. 3, Sixth District of Missouri," and this brand was on the seventeen barrels found in the basement at 2807 East 45th Street. The stock on January 20, 1920, checked seventeen barrels short. State v. Babb, 76 Mo. 504; State v. James, 194 Mo. 276. (4) Recent exclusive possession by the accused of goods stolen at the time of the burglary raises the presumption of law that he was guilty of both burglary and larceny. The appellant and co-defendant, Murply, were shown by the evidence to have been in exclusive possession of the premises containing the stolen whiskey on the day following the burglary and larceny, and this evidence was competent. State v. Babb, 76 Mo. 503; State v. Henderson, 212 Mo. 215; State v. Toohey, 203 Mo. 678. (5) After appellant's instruction in the nature of a demurrer to the evidence was overruled by the court he proceeded to offer testimony in support of his defense, and thereby waived his right to have the action of the court in this regard reviewed. State v. Lackey, 230 Mo. 713; State v. Martin, 230 Mo. 700. (6) Self-serving declarations of accused are not admissible in his behalf, unless they are a part of the *res gestae*. Appellant complains of the court's action in refusing to admit his conversation with his alibi witnesses at the Antlers Hotel. The refusal was proper. State v. Atchley, 186 Mo. 194; State v. Burgess, 193 S. W. 824; State v. McGuire,

113, Mo. 673; 16 C. J. 635-6. (7) Where there is substantial evidence supporting the verdict of the jury, as in this case, this court will not interfere. State v. Fields, 234 Mo. 627; State v. Sharp, 233 Mo. 298; State v. Cannon, 232 Mo. 215. (8) Instruction No. 2 is in approved form and correctly declares the law in this case. State v. Conway, 241 Mo. 281; State v. Blockberger, 247 Mo. 606. (9) Instruction No. 3 on recent possession of stolen goods is correct. State v. James, 194 Mo. 277; State v. Owen, 79 Mo. 624-6. (10) Possession of personal property is presumptive evidence of ownership. Instruction No. 4 is a correct statement of the law regarding the corporate ownership of the whiskey involved in this case. State v. Boone, 70 Mo. 653. (11) In order to justify reversal of the judgment it should appear that the remarks of counsel for the State were prejudicial to the defendant. The remarks complained of are proper conclusions drawn from the testimony in the record. State v. Harvey, 214 Mo. 410; State v. Whitsett, 232 Mo. 529.

HIGBEE, P. J.—The indictment charges that the defendant Joe Tracy, and Charles Murphy, on January 20, 1920, broke into a certain building, the bonded warehouse of the Blue Valley Distillery Company, a corporation, located between 39th and 40th Streets, on Holden Avenue, Kansas City, Missouri, and stole seventeen barrels of whiskey, of the value of $8500, of the goods and property of the Blue Valley Distillery Company, against the peace and dignity of the State.

The defendant was arraigned on April 15, 1920, pleaded not guilty, and entered into a recognizance in the sum of $5,000. On May 29th, the defendant was granted a severance and the trial was set for June 14th. On June 2nd the defendant applied for a continuance, which was overruled, and the cause set for trial on June 21st, on which day the trial was again set for July 12th. When the case was called for trial on July 12th, the

defendant forfeited his recognizance, and *scire facias* was issued returnable on the 1st day of the next term of court, being September 6, 1920. On December 13th, the defendant again applied for a continuance, on account of the absence of witnesses, which was overruled, and the case went to trial before a jury on the following day, resulting in a verdict of guilty of burglary and larceny, for which the punishment was assessed at two years' imprisonment in the penitentiary for the burglary, and an additional two years for larceny. Motions for new trial and in arrest were filed and overruled. The defendant was thereupon sentenced in accordance with the verdict, and an appeal granted, the defendant being allowed to prosecute his appeal as a poor person.

The testimony for the State is thus summarized in the statement of the learned Attorney-General:

"The Blue Valley Distillery Company, a holding corporation of the S. Hirsch Distillery Company of Kansas City, Missouri, was the owner and in possession of seventeen barrels of whiskey on January 20, 1920, which was contained in a Goverment bonded warehouse located at Leeds, Jackson County, Missouri.

"One W. S. Clark was employed by the Blue Valley Distillery Company as a night watchman and was on duty on the night of January 19, 1920. About 1 or 1:30 in the morning while he was seated in the office, knocks were heard on the door and upon opening the door two men covered him with pistols and commanded him to put up his hands. This he did, while one man took his pistol from him. These men then asked where the whiskey and the key were, and were told it was in the bonded warehouse and only the Government gauger carried the key. They then proceeded to break the lock and force the door open, and directed Clark to show them where the whiskey was. It was stored on the third floor. The three went up and located the whiskey, and then returned and went through the building to the east end on Holden Avenue, and there were joined by four more

. men, who were waiting. Two of the four were defendant, Joe Tracy, and co-defendant, Charles Murphy.

"They then whistled and a truck drove up and stopped for loading.

"The party of six men took Clark and went into the warehouse, defendant being one of the six. After reaching the third floor witness was blindfolded, the defendant holding his head while another man put on the blind, which was left on about one and a half hours.

"Clark heard one man ask how many barrels they had down, and another replied that they had twelve. The other then said that they must have seventeen and took some more barrels down. The barrels were taken down on an elevator, which witness could hear running, and could hear them rolling the barrels and their conversation.

"The blind-fold was then removed, and Clark was taken down to the truck and required to help load the balance of the barrels. He saw five men with revolvers, and Tracy and Murphy had shotguns, after the truck pulled out.

"Tracy told witness that they were going to take him for a ride, and he and Murphy required witness to get into the front seat of a touring car, which was waiting at 39th Street, and Tracy and Murphy took the rear seat. They drove him around on various streets for some time, and finally let him out at 57th and Troost Avenue, and told him to go down the street and not look back. However, witness did look back when about a block away, and saw the car turn around and go south from whence they came.

'Tracy said when leaving for the drive, 'We have looked this place over. I have been to this place twice and looked it over, and we aimed to get here sooner but we were detained.'

"The fair market value of the whiskey was shown to be $8,000.

"It was shown by Captain John J. Ennis, a police captain in charge of Police Station No. 9, Kansas City,

Missouri, on January 20, 1920, that he took seven police officers and went to 2807 East 45th Street about ten o'clock a. m., and went into the house and found defendant, Tracy, and Charles Murphy, but no one else. They also found seventeen barrels of whiskey in the basement, one of which had been broken open. Both men were intoxicated. The whiskey was turned over to Mr. McNutt for the Government. The building was a cottage, and defendants were in the living room thereof. The policemen saw there a Winchester revolver, 30-30, and a pop shotgun and a .38 Colt's revolver.

"The defendants were arrested and taken to Police Station No. 9. Both defendants refused to talk.

"The officers watched the house from the morning of the 20th to the morning of the 22nd, and investigated who lived there, but found no one except the defendants.

"The whiskey was identified by R. J. McNutt, the United States Government store-keeper and gauger stationed at Kansas City, and assigned to the Blue Valley Distillery Company at Leeds. He had the key to its bonded warehouse. He saw the whiskey at the house where it and defendants were found, and identified it by checking and comparing the serial numbers on the barrels, the numbers, stamps and date of inspection, with the records of the barrels in the Revenue Department, and by re-weighing them.

"McNutt stated that these barrels were in the bonded warehouse of the Blue Valley Distillery Company prior to January 20, 1920.

"Evidence on behalf of the defendant tended to prove the following:

"That defendant, Joe Tracy, came into a pool hall at 802 Main Street, Kansas City, Missouri, owned and operated by Claud Higgs and Frank Fox, on the night of January 19, 1920, at about 9:30 and remained there until some time after ten o'clock, when Claud Higgs and Tracy went to the Antlers Hotel and saw one Jack Sullivan. They met Sullivan there in the lobby of the hotel and talked with him for some time.

"While there one Sam Dana, a constable, and Frank Kane came into the lobby and joined them about twelve o'clock, and all remained there until about two a. m. While there a Mr. Brennon came in, accompanied by a little fellow said to be a jockey. During this time a stranger came in and offered to sell some gin very cheaply. Tracy and Constable Dana agreed to buy a few cases on the next day. From the Antlers, defendant, Tracy, and Higgs went to 9th and Main Street to a restaurant. They there found Fox taking lunch, and Tracy and Higgs took lunch, and Higgs went upstairs in the Westgate Hotel at two and went to bed. Higgs first heard of defendant's arrest the next evening when he saw it in the newspapers.

"Tracy lived at 401 Broadway at this time. Higgs called there the day before to see Tracy's wife, who was sick, and found Tracy there waiting on her.

"In the above statement with reference to the time and place of meeting, Tracy was corroborated by Frank Kane, Sam Dana and Frank Fox, the latter also a constable of Kansas City."

The appellant has not favored us with a brief, but we have carefully examined the record in connection with the erors assigned in his motion for new trial.

I. The first complaint is the overruling of his application for continuance on the ground of the absence of two witnesses, Brennon and Poole, by whom he claimed he could establish his plea of alibi. The indictment was returned April 13, 1920; the defendant was arraigned April 15th. The record shows that he ap-

Continuance.

plied for a continuance on June 2, 1920, which application was overruled. He forfeited his recognizance on July 12, 1920. The case came on for trial on December 13, 1920, when he made his second application for a continuance. The bill of exceptions shows that the defendant put four witnesses on the stand to establish his defense of alibi. The application discloses that the testimony of the absent witnesses would have been of the same character as that of the witnesses the defendant

produced on that issue; it was simply cumulative. The
case had been pending in court for more than eight
months. It is alleged the witnesses had been absent
from the city for several months engaged in the racing
business. It is not shown when the witnesses left the
city, or whether the defendant knew of their intention to
leave in time to serve them with subpoenas or to take
their depositions. He had secured a continuance by
forfeiting his recognizance. The granting of a continu-
ance is largely in the discretion of the trial court. The
defendant was not prejudiced by the refusal of· the con-
tinuance. The application was properly overruled. [State
v. Williams, 170 Mo. 204; State v. Cain, 247 Mo. 700;
State v. Salts, 263 Mo. 304, 314.]

II. It is claimed that the court erred in permitting
the witness McNutt to testify to the identity of the
barrels of whiskey by comparing the marks, brands and
numbers thereon with the original record kept by the
Government at the distillery and warehouse
and at the office of the Collector of Internal
Revenue, which records were not produced at the trial.
McNutt testified that he was called to the house at 2807
East 45th Street, Kansas City, on January 21, 1920
(where Tracy and Murphy and the seventeen barrels
of whiskey had been found on January 20, by Captain
Ennis and the seven policemen). ''Every barrel has a
complete record, the distillery brand and serial number
on it. There is a record of that barrel in the Blue Valley
Distillery. It is kept at the Internal Revenue office in
Kansas City and at the Commissioner's office at Wash-
ington, D. C., and there is a maker's stamp on them.
I have the numbers. I got them off of the record and off
the barrels, that is, from the inspection of the barrels
after they were recovered. I made this paper from the
record and from re-weighing those barrels and inspecting
their contents.''

''MR. LYNCH: I object to the use of this copy of the
record either to refresh the memory of the witness or as

*Identification.*

proof; a copy cannot be used in the absence of the original which is the best evidence.

"MR. KILROY: I am not offering this in evidence.

"WITNESS: At the time I checked the seventeen barrels on January 21 at 2807 East 45th Street, I wrote the serial numbers of the barrels down and took them back to the distillery and then I went over there and inspected them. .I inspected and counted the barrels in the bonded warehouse at Leeds of the Blue Valley Distillery Company on January 20, 1920. Seventeen barrels were missing. I found them at 2807 East 45th Street, Kansas City, Missouri. I identified them by the serial numbers and the date of inspection. The serial numbers were cut in the heads of the barrels with steel dies, and also stenciled on there. The brand was on there of the Blue Valley Distillery Company No. 3, 6th District of Missouri; burned on with a large stamp. I went over with Mr. Mason, superintendent of the Blue Valley Distillery Company, and we took them back to Leeds to the bonded warehouse. I knew when I examined those barrels where they came from; they went out of there on the night of January 20, 1920. I could tell it because the barrels were missing.

"Q. You could not have told those barrels came from the warehouse until you compared the numbers with the original records you had at the warehouse? A. Yes, sir; I could.

"Q. But you don't remember the numbers of those barrels? A. I could remember part of them. I could not say I could have remembered all of them.

"Q. Tell the jury what numbers you remembered that morning. A. I remembered 17307 to 17310 and 17320, and I remembered——.

"Q. Just give them in full. A. I could not do that without refreshing my memory. Part of them I had inspected in bond and went over them. I don't know that I can give so many of them now. It is practically a year now."

The objection made by counsel for appellant as to the identification of the barrels of whiskey was that the witness could identify them only by making a comparison between the marks, brands and numbers on the barrels and the original record made and kept at the distillery warehouse, and the original records should be produced before allowing the witness to identify the barrels.

Where a witness bases his testimony on a memorandum or other writing, having no independent recollection of the facts, such writing much be produced if required, in order that opposing counsel may inspect it, and, according to some authorities, the witness cannot testify without producing the writing. [Wilcoxson v. Darr, 139 Mo. 660, 673; 40 Cyc. 2463 (VII).]

The witness did not use a copy of the original records to refresh his memory. He testified that he had checked over the barrels in the warehouse and there were seventeen barrels missing. He had an independent recollection of the numbers of several of the barrels. He identified the barrels as soon as he saw them in the basement of the house at 2807 East 45th Street. The weight to be attached to his testimony was for the jury.

In State v. Babb, 76 Mo. 501, 504, SHERWOOD, J., said:

"And we regard the identity of the goods as having been sufficiently established. The owner positively identified the key of his store found in defendant's possession, along with other articles, resembling in every respect, those charged in the indictment and proven to have been stolen; and it was for the jury to say whether, considering all the circumstances of the case, they were satisfied beyond a reasonable doubt of the identity of the goods. The identity of a person or thing is an inference to be drawn from a series of facts. [Wharton, Crim. Ev., Secs. 13, 27.] To a certain extent it rests on the opinion or judgment of the witness. For instance, if prior to the trial in which he is summoned, he sees a person or thing and that person or thing bears a re-

·semblance more or less striking to the person or thing with whom or with which he is familiar or acquainted, from that knowledge and that resemblance, he is enabled to say, with more or less positiveness, that the person or thing seen by him, is identical with the person or thing in question. 'Ordinarily, mere belief or persuasion not resting on a sufficient or legal foundation, is inadmissible, but with respect to persuasion or belief based on facts within the witness's own knowledge, the case is otherwise. On questions of identity of persons and handwriting, it is every day's practice for witnesses to swear they believe the person to be the same, or the handwriting to be that of a particular individual, although they will not swear pointedly; and the degree of credit to be attached to the evidence is a question for the jury.' [Greenwell v. Crow, 73 Mo. 638; Stark, Ev., sec. 173; Greenleaf, Ev., sec. 440.]

"In Massachusetts, it has been held that where the only question in the trial of a criminal case is the identity of the prisoner with the guilty party, the jury may be justified in returning a verdict of guilty although no witness will swear positively to the identity. [Commonwealth v. Cunningham, 104 Mass. 545.] In that case, the witnesses would not swear that the prisoner was the same man they saw on the wagon, but that 'he resembled him.' And the court say: 'Upon this question of identity the evidence offered was all of it competent and proper for the consideration of the jury. It is impossible to say that it had no tendency to convict the defendant. Its sufficiency was to be estimated and weighed exclusively by them."

See also State v. James, 194 Mo. 268, 276.

III. Appellant complains of the admission of testimony as to certain guns and pistols and barrels of whiskey being found at the house at 2807 East 45th ·Street, without showing that defendant controlled or owned said house or had any connection with the guns, pistols,

*Connection With Stolen Property.*

whiskey or house, as being irrelevant and incompetent.

The witness, W. S. Clark, positively identified Tracy and Murphy as two of the six men who engaged in the burglary and larceny on the morning of January 20, 1920. They blindfolded him. One man said they had twelve barrels down. "They says, well, we have to get seventeen and they brought down, I suppose, after that, the other barrels." After bringing the barrels down the elevator, they removed the hoodwink and compelled him to help load the barrels onto the truck. Murphy and Tracy had shotguns. The others had revolvers. Captain Ennis testified to finding Tracy and Murphy and no one else in the house at 2807 East 45th Street on the morning of January 20th. No one else was there; they were intoxicated. They found seventeen barrels of whiskey in the basement; one of the barrels was broken. They also found a pop shotgun and revolvers. Captain Ennis arrested Tracy and Murphy. The house was closely watched until the morning of January 22nd, but no one was found there except the defendants. We think the evidence sufficient to show exclusive possession of the premises by the defendants who were confederates in the crime. Their complicity in the crime was also shown by positive, direct testimony. The jury might well find the house was their rendezvous. The concealment of the whiskey in the basement is criminatory evidence against both of the defendants. [State v. Phelps, 91 Mo. 478; State v. Prunty, 276 Mo. 359, 371; 25 Cyc. 139 (4).] There is no merit in the objection to finding the weapons in the room where the defendants were arrested.

IV. Appellant complains that the court excluded his conversation with the witnesses who testified he was at the Antlers Hotel at the time the burglary Self-serving was committed. They were no part of the Declarations. *res gestae* and were self-serving declarations [State v. Maguire, 113 Mo. 670, 673; State v. Atchley, 186 Mo. 174, 194; 16 C. J. 636.]

294 Mo.—25

V. The appellant, in his motion for new trial, assigns error in the giving of instructions 2, 3 and 4 for the State. The appellant does not specify his objections. Number 2 is to the effect that if the jury find that the defendant, either alone or knowingly acting in concert with others, broke into the bonded warehouse of the Blue Valley Distillery Company, with the felonious intent to steal, etc., and did steal, etc., you will find the defendant guilty of larceny, and, in addition to the punishment you may have assessed for the burglary, you will assess his punishment for the larceny, etc., We presume the objection to this instruction is that it assumes that the Blue Valley Distillery Company was the owner of the property alleged to have been stolen. We will consider this objection in connection with instruction numbered 4, in Paragraph 8.

Assumed Ownership.

VI. Instruction number 3 is as to the legal presumption of guilty arising from the possession of recently stolen property. In 25 Cyc. 133, (2), it is said:

Stolen Property: Possession: Presumption.

"When a person is found in possession of recently stolen property, it is usually held that the burden of accounting for such possession rests upon him, or as it is commonly put, that the possession of itself raises a presumption against the accused, which will justify conviction if he does not meet it by a reasonable explanation." At page 134, b:

"Whatever be the law as to the presumption of guilt, it is everywhere agreed that the presumption is one of fact, not of law; the jury must pass on all the evidence. And it is error to charge that there is a legal presumption of guilt, or that the law presumes guilt. And the weight to be given to such evidence is for the jury alone; under no circumstances is the presumption conclusive. It is error in some states to charge that it is presumptive evidence, or creates a prima-facie case. Such instruction is illegal as an instruction on the weight of evidence. So

it is error to charge that possession is a strong criminating circumstance, in jurisdictions where a charge on the weight of evidence is forbidden. It is error in such jurisdictions even to charge that it is a criminating circumstance tending to show guilt. But it has been held that a charge that 'the law presumes,' while technically wrong, is not cause for reversal if the whole charge makes it clear that the presumption is not conclusive, and the jury is to consider all the evidence. For the same reason defendant cannot have a charge that mere evidence of possession without more will not justify conviction; it is a charge on the facts. The jury should be instructed as to presumption.''

And at page 151, d:

''It is sufficient to instruct the jury that the unexplained possession of property recently stolen is presumptive evidence that the possessor stole it, and that if the jury have a reasonable doubt as to the truth of the explanation they should acquit.

''An instruction on the weight of the possession of the stolen property by defendant as evidence is erroneous.''

As is well said in 17 R. C. L. sec. 76, p. 71: ''The law concerning the effect of evidence showing the possession by an alleged thief of stolen property is in an apparent state of confusion, due in many cases to loose and inexact methods of expression in discussing the question.'' In State v. Swarens, 294 Mo. 139, recently decided in Banc, it was held that the presumption arising from the possession of recently stolen property is one of fact and not of law, overruling all the Missouri cases on the subject, and the giving of an instruction that unless such possession is explained, etc., the jury should find the defendant guilty, was reversible error for two reasons: (1) the presumption is one of fact and not of law, and (2) the instruction is an unwarranted comment on the evidence. In that case the conviction rested entirely upon recent possession. In the instant case there is positive and direct evidence of the defendant's com-

plicity in the burglary and larceny; his sole defense was evidence tending to prove an alibi, which the jury discredited. He offered no evidence explanatory of his possession.

Now it appears from the foregoing citations that in many jurisdictions it is proper to instruct the jury that the unexplained possession of recently stolen property is presumptive evidence that the possessor is the thief, if it is made clear to the jury that it is a presumption of fact, and that the jury must pass on all the evidence. It is also held in some jurisdictions that an instruction like that given in the instant case, "while technically wrong, is not cause for reversal, if the whole charge makes it clear that the presumption is not conclusive and the jury is to consider all the evidence." We are forbidden to reverse a judgment for mere technical errors not prejudicial to the appellant. There is another rule, however, that error is presumed to be prejudicial. Unlike the Swarens Case, we have here substantial evidence tending to prove an alibi. In view of this we are unable to say that the instruction was not prejudicial.

VII. The court properly refused the defendant's instructions A and B in reference to the defense of alibi.

Alibi. They were covered by number 8 given for the State. The court properly instructed the jury as to the presumption of innocence and reasonable doubt and properly overruled the defendant's demurrer at the close of all the evidence.

VIII. Instruction 4, given for the State, reads:

"The court instructs the jury that for the purposes of this case the whiskey in question
Assumed
Ownership. was, on the 20th day of January, 1920, the property of the Blue Valley Distillery Company, a corporation."

The defendant's witness, Clarence A. Hirsch, testified that he was one of the owners of the S. Hirsch Distillery Company, a corporation; that said company and

the Blue Valley Distillery Company, from a practical point of view, were one and the same. Technically, they were two distinct corporations on account of certain warehouse laws. The title to the ground on which were the building and the stock of goods, was in the name of the Blue Valley Distillery Company, but the S. Hirsch Distillery Company owned all the stock in the Blue Valley Distillery Company. The Blue Valley Distillery Company owned the S. Hirsch Distillery Company just as much as the S. Hirsch Distillery Company owned the Blue Valley Company. They were the same. The officers were the same. The title to all the property in the distillery was in the Blue Valley Distillery Company.

The appellant cannot complain that the court, in giving this instruction, assumed the truth of the testimony of this witness. In the consideration of this appeal, the variance, if any, is immaterial. On the trial of a felony or misdemeanor, a variance in the ownership of any property named in the indictment shall not be deemed ground for an acquittal of the defendant unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant. [Sec. 3907, R. S. 1919; State v. Dickerson, 24 Mo. 365, 367; State v. Decker, 217 Mo. 315, 320; State v. Martin, 230 Mo. 680, 695, 132 S. W. 595.]

IX. The indictment jointly charges the defendant and Murphy in the same count, with burglary and larceny.

Indictment: Verdict. This is authorized by Section 3305, Revised Statutes 1919, where both offenses are committed at the same time. The indictment conforms to the statute and clearly and distinctly charges the commission of both felonies. [State v. Moss, 216 Mo. 436, 438; State v. Burns, 263 Mo. 593, 597.] The verdict found the defendant guilty of each offense and is in proper form. [State v. Blockberger, 247 Mo. 600, 606.]

X. The appellant complains of certain remarks of the assistant prosecuting attorney in the course of his opening argument to the jury; that the defendant "neither toiled nor did he spin," and that defendant surveyed his jobs before "he pulled them off." The assistant prosecuting attorney correctly quoted the Master's words, "They toil not, neither do they spin." These statements were based upon the evidence of Mr. Clark: "Tracy said when leaving for the drive, 'We have looked this place over. I have been to this place twice and looked it over, and we aimed to get here sooner, but we were detained.'" This testimony justified the conclusion that Tracy was a professional burglar. The objections seem to be over-nice, fastidious. They were properly overruled. In order to justify a reversal of a judgment for improper argument, it must appear that the remarks of counsel were prejudicial "and probably had something to do in bringing about the conclusion reached by the jury, and such, we think, was not the case." [State v. Hibler, 149 Mo. 478, 484; State v. Harvey, 214 Mo. 403, 411; State v. Whitsett, 232 Mo. 511, 529; Pennington v. Railways Co., 201 Mo. App. 483.]

*Argument to Jury.*

For the error in giving Instruction Number 3, as indicated in Paragraph 6 of this opinion, the judgment is reversed and the cause remanded. All concur except *Walker, J.,* who dissents.