**STATE of Missouri, Respondent,**

v.

**Edwin Malcolm MILLER, Appellant.**

No. 49546.

Supreme Court of Missouri,

Division No. 1.

May 13, 1963.
Opinion Modified on Court's Own Motion
June 4, 1963.

Motion for Rehearing or for Transfer
to Court En Banc Denied
June 4, 1963.

John D. Schneider, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, William L. Hungate, Special Asst. Atty. Gen., Troy, for respondent.

HOUSER, Commissioner.

Under §§ 560.070 and 556.150, V.A.M.S., Edwin Malcolm Miller was charged with and convicted of attempted burglary second

degree, and three previous convictions of felony. The court fixed his punishment at five years' imprisonment in the penitentiary. Defendant has appealed from the sentence and judgment.

The information charged defendant with attempted burglary of Dairy Dell Ice Cream Store in St. Louis by wedging a chisel and punch in the door.

The evidence most favorable to the state shows the following: Patrolman George Keck, driving his patrol car on north Broadway at 3 o'clock in the morning, was checking buildings. He drove into the parking lot adjacent to the ice cream store, and as his front wheels were a little over the sidewalk he noticed a man (the defendant) squatted down, or crouched, facing the front door of the store, under the front canopy. The patrolman first saw his back. When the car entered the lot the man turned around and faced the patrolman and started raising up to a standing position, right by the front door of the store . . . 2 or 3 feet from the door. Keck stopped the patrol car, opened the door, got out, and asked the man what he was doing there. The man started pulling up his trousers, saying "This insulated underwear causes your trousers to fall all the time," and that he was waiting for a bus. (There was no bus stop in front of the store; it was "down the street further.") The man was unable to produce any identification. He gave the officer one name, then a different name and finally admitted his true name. Asked about the truck parked in the lot adjacent to the store, the man first said a friend of his drove him to the place, then admitted he was the driver of the truck. The officer arrested the man and radioed for his supervisor, Sergeant Beckman, who arrived in a few minutes. While Beckman watched defendant, Keck checked the building to see if it had been entered or any attempt had been made to do so. There was no evidence of any entry or attempt to enter at the back or sides of the building. At the front door he found a metal chisel and a punch wedged under the framework of the front door, between the sill and the bottom of the door— "stuffed under the door" ⅜ or ½ inch—far enough to cause the tools "to stand straight out, and the end[s] not laying on the ground." The door, of modern design, was all glass, with a thick aluminum frame. There was a lock located at the bottom of the door. A bolt goes down into the sill. To open the door without a key it would be necessary to chisel the lock completely off. The man was searched and the officers found in his pockets a screw driver with a 6-inch blade, a 2-blade knife, a shoehorn and a 6-inch spring steel ruler. In the cab of the truck there was a box, lying open, containing assorted tools, and in the back part of the truck a crowbar was found. The owner of the store, Robert Hutter, and a photographer, were called to the scene. At the trial defendant took the stand, admitted seven pleas of guilty, including two charges of burglary and larceny, and one jury conviction of first degree robbery by means of a dangerous and deadly weapon. With a touch of professional pride defendant testified "I am a burglar, but I'm not insane"; that if he was going to break in a place he would "go with a crowbar, any place except the front door"; that he was not intending to burglarize this store.

Defendant's first point is error in denying defendant's request to require state's witness Keck "to produce his handwritten notes from which he testified to alter a prior inconsistent statement." The background: The state's case was based on the theory that the tools were *wedged in the door,* which would show that someone (circumstantially this defendant) had committed an overt act looking toward the commission of the offense, and had not simply collected tools at the site in preparation for the commission of an overt act in furtherance of a design to break and enter. State's Exhibit 1, a photograph taken at the scene of the arrest, did not show the tools *wedged in the door.* It showed them lying on the walk directly in front of the door, but not touching the door—not wedged in between

the doorsill and the bottom of the door. If that was the situation and position of the tools at the time Keck first saw them, the state could not make a case on the theory it adopted. When Hutter appeared at the scene he looked at the front door from the outside, then went into the building through another entrance, unlocked the front door from the inside, and swung it open. The door opened outward and it swung freely. If the tools had been wedged in the door at the time the door was opened, they necessarily would have been dislodged and displaced from their wedged position, and they would have been cast out and away from contact with the door. Exhibit 1 showing clearly the tools not "wedged" as aforesaid, it became important to know whether the photographs were taken before or after the door was unlocked and opened.

At the trial Keck testified that the chisel and punch were wedged under the framework of the door *when he first examined the door;* that Exhibit 1 truly represented the door as it appeared when he examined it, except it did not show the tools under the door; that the tools were "a little away from the door" when the picture was taken; that he removed the tools before the photographer took the picture; that the picture was taken after the door had been opened; that "they" disturbed the tools at the base of the door before the photograph was taken. On cross-examination Keck admitted that seven days prior to trial he gave a statement to defendant's counsel, in the presence of the assistant circuit attorney, reduced to writing but not signed, in which Keck stated that "The door had not been opened when the photographer took the pictures."

Keck's admission on cross-examination; Exhibit 1, and certain testimony by state's witness Hutter provided defendant with his "primary defense." Hutter testified that after being called to the premises at 3:30 a. m., and before entering the store (and therefore before he opened the door from the inside) he saw the chisel and punch lying an eighth of an inch from the door, "right up to the bottom of the door ready to be wedged under there," but *not wedged under the door.*

When counsel for defendant called on patrolman Keck to explain why he had made the pre-trial statement that the door had *not* been opened at the time the photograph was taken, Keck's explanation was that he was "just mistaken"; that at the time the pre-trial statement was made he didn't remember "without refreshing [his] memory a little bit and looking at [his] notes." Keck said he had made some notes, kept at home in handwritten form. (Keck had told counsel for defendant, at the time he made the pre-trial statement, that he would refer to his report; that he did not have an independent recollection of all the facts.) At the trial Keck testified that he remembered it better than he did the day he gave the pre-trial statement, because, as he put it, "I checked my notes at home that I keep for my own." He did not have the notes with him at the trial. "Q. Where are they? A. At home. They are my property. Q. I see. Yet you are testifying from what those notes say. Is that right? A. That's right. Q. You don't remember what happened yourself? A. Sure, I remember what happened. I wrote the stuff down. I can remember it after I refresh my memory." He indicated that he was mistaken at the time he made the pre-trial statement because he had not had a chance to read his report. Counsel for defendant moved that this report be produced for cross-examination. Counsel stated to the court that if, as Keck stated, Keck did not have an independent recollection of all the facts and had to refer to the report, defendant's counsel had a right to examine the report. No request was made for the issuance of a subpoena duces tecum. The court refused the request.

■ Defendant claims the right to the production and examination of the handwritten notes on the basis of Traber v. Hicks, 131 Mo. 180, 32 S.W. 1145; State v Patton, 255 Mo. 245, 164 S.W. 223; State v.

Nardini, Mo.App., 186 S.W. 557; and State v. Tracy, 294 Mo. 372, 243 S.W. 173. Three of these cases, along with others of the same tenor, were recently distinguished in State v. Crayton, Mo.Sup., 354 S.W.2d 834[3], in which the view was expressed that defense counsel should be permitted to examine a paper or document from which the witness has refreshed his recollection *while he is on the stand testifying,* but this is not required where the paper or document is not produced and used at the trial (and that this is true notwithstanding the paper may have been examined by the witness prior to the trial). That principle applies here. Keck did not use his private notes while on the stand testifying. He had used them sometime during the week prior to the trial to refresh his memory, and he did not have them in his possession at the trial; and he testified at the trial from his own personal recollection, refreshed as aforesaid, but not then aided and assisted by the notes in hand.

█ At the time Keck gave his pretrial statement he told defendant's counsel that he did not have an independent recollection of all the facts, and indicated that he intended to refer to his private notes. With knowledge, prior to trial, of the existence of the private notes, and that they might vary from the account given in the pre-trial statement, defendant could have subpoenaed the private notes in preparation for the trial. This was not done. Instead, relying on Keck's pre-trial statement, defendant took the chance that Keck's re-reading of his private notes would not awaken a recollection contrary to the pre-trial statement. When Keck's testimony at the trial conflicted with his pre-trial statement defendant did not apply to the court for the issuance of a subpoena duces tecum commanding Keck to produce the private notes, under the provision of Sup.Ct. Rule 25.19, V.A.M.R. (Had he made such an application it would have been discretionary with the court whether the trial should be recessed pending production of the private notes. State v. Crayton, Mo.Sup., 354 S.W. 2d, 1. c. 838 [3].) Nor did defendant file a motion to produce and permit inspection under Sup.Ct. Rule 58.01; § 510.030, V.A.M.S., assuming that procedure was available to defendant. (It may not have been available, for an order of production of papers is not warranted where there is merely a suspicion that they contain evidence material to the merits or defense of the action, State ex rel. Page v. Terte, 324 Mo. 925, 25 S.W.2d 459, 462 [2, 3], or upon the possibility of impeachment. State v. McDonald, 342 Mo. 998, 119 S.W.2d 286, 289 [6]; State v. Kelton, Mo.Sup., 299 S.W.2d 493, 497 [9].) Defendant's application was oral, and there was no showing that the private notes contained evidence material to the defense of the case. From the record we conclude that defendant's purpose was to impeach the testimony of Keck. This comes within the ruling of State v. Kelton, supra, 299 S.W.2d, l. c. 497 [8, 9], that under such circumstances defendant did not bring himself within the terms of the statute (and rule). And see State v. Cochran, Mo.Sup., 366 S.W.2d 360. Accordingly, there was no error under this record in refusing defendant's oral request to require Keck to produce his private notes.

Defendant's second point is error in giving Instruction No. 1, which follows:

"On the 23rd day of February 1962 the State of Missouri filed in this Court what is known and designated in law as an amended information which charges the defendant, Edwin Malcolm Miller, with the offense of Attempted Burglary in the Second Degree. The defendant pleads not guilty to said charge, thereby raising an issue of fact between the defendant and the State of Missouri which you must determine from all of the evidence in this case.

"It is the duty of the Court to instruct you on all questions of law arising in this case, and it is your duty to receive such instructions as the law of the case and to find the defendant guilty or not guilty, according to the law as declared to you by the Court in these instructions and the evidence

as you have received it under the directions of the Court.

" 'Burglary in the Second Degree' is the breaking and entering of any building in which there shall be at the time any goods, wares, merchandise, or other valuable things kept or deposited with the felonious intent on the part of the person, if shown to do such breaking, to steal, or commit any crime in such building.

" 'Attempted Burglary in the Second Degree,' is committed when one attempts to commit the offense of Burglary in the Second Degree, as heretofore defined, and in such attempt does any act or acts suited and adapted to carry into execution a Burglary in the Second Degree, for the purpose and with that intent, but fails in the actual perpetration and accomplishment of such Burglary in the Second Degree, or is prevented or intercepted in the execution of such.

"If upon consideration of all the evidence in this case and the circumstances shown thereby, and under the instructions of the Court, you find and believe from such evidence, beyond a reasonable doubt, that in the City of St. Louis and State of Missouri on the 30th day of November 1961 the *Defendant did feloniously, burglariously, and with the felonious intent then and there to steal from and in said building he did forcibly attempt to break and enter into a certain store, shop and building* of Robert Hutter known and designated at the address of 5026 North Broadway in the City of St. Louis, Missouri, and if you further find and believe from the evidence, beyond a reasonable doubt, there was then and there and at said time kept and deposited in said store, shop and building certain goods, wares and merchandise of any kind and of some value that were the property of said Robert Hutter, *and* further find and believe from the evidence, beyond a reasonable doubt, *that said attempted burglary, as defined heretofore in this instruction, was made by the defendant in this case by placing or wedging a chisel and a punch under the door of the aforesaid building,* and that the defendant herein was intercepted and prevented in the execution of Said Burglary in the Second Degree in the actual perpetration or execution thereof; then if you find all of the facts to be as required by this instruction, which is numbered one, you will find the defendant guilty of Attempted Burglary in the Second Degree; and unless you so find all of the facts to be as required by this instruction, you will find the defendant not guilty.

" 'Feloniously,' as this word is used in these instructions, means wickedly and against the admonition of the law.

" 'Burglariously,' as this word is used in these instructions, means with the intent to commit a burglary.

"Before you can find the defendant guilty of Attempted Burglary in the Second Degree, you must find from the evidence in this case, beyond a reasonable doubt, that the defendant, Edwin Malcolm Miller, attempted to break into and enter the aforesaid building, but to constitute such attempted breaking, no particular amount of force is necessary to be used.

"The only issue submitted to you and which you will determine by your verdict in this case is that of whether the defendant is guilty or not guilty; and if under the evidence and the instructions of the Court, you find the defendant guilty, you will so say by your verdict, but you will not affix any punishment for the guilt that you may find."

First, it is claimed that attempted burglary in the second degree is improperly defined.

Section 560.070, V.A.M.S., provides that "Every person who shall be convicted of breaking and entering any building * * * in which there shall be at the time * * * any goods, wares, merchandise or other valuable thing kept or deposited, with the intent to steal or commit any crime therein, shall, on conviction, be adjudged guilty of burglary in the second degree."

Section 556.150, V.A.M.S., provides that "Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same, upon conviction thereof, shall, * * * be punished as follows: * * *."

The complaint is that the definition of attempted burglary (fourth paragraph) is improper and prejudicial, for the reason that it includes within its scope acts of preparation (laying tools near the door) as well as acts of perpetration (wedging the tools underneath the door).

■ The instruction follows the language of definition contained in § 560.070, but departs from the language of definition contained in § 556.150. It would have been better to say "does any act or acts toward the commission of a Burglary in the Second Degree" instead of "does any act or acts suited and adapted to carry into execution a Burglary in the Second Degree." The variance was not prejudicial, however, because in the submitting portion of the instruction (the italicized portion of the instruction), and from the instruction considered as a whole, the jury was clearly and plainly required to find the doing of an overt act toward the commission of the offense. Before the jury could find defendant guilty of attempted burglary second degree the jury was required to find that defendant attempted to break and enter into the building by placing or wedging a chisel and a punch under the door. Under Instruction No. 1 the jury could not have found defendant guilty for merely assembling tools suitable and adaptable to the execution of an intention to break and enter, and laying them out on the area in front of the door.

■ Second, it is claimed that the use of the terms "said attempted burglary," "said Burglary in the Second Degree," and "such attempted breaking," assumed there was an attempted burglary. We do not so interpret the language employed. The instruction required the jury to find the facts constituting attempted burglary second degree; the quoted references to burglary and breaking were sufficiently preceded by such requirements. The rights of defendant were adequately safeguarded in this respect.

Third, it is claimed that the next to the last paragraph, concluding with the words "no particular amount of force is necessary to be used," is an abstract statement of law which prejudicially gives undue prominence to the primary issue of fact and misdirects the jury. The argument is that the challenged language "does not charge the jury that they must find that *some* force (though slight) was applied to effect a breaking." This particular statement of the law on the matter of force is sufficient, taken in conjunction with the wording in the fifth paragraph "did * * * forcibly attempt to break and enter * * *."

■ Fourth, it is claimed the instruction submits facts not supported by evidence; that there is no evidence the defendant wedged a chisel and punch under the door, and that as stated the jury was not required to find that the tools were actually in a wedged position under the door, but were submitted a conclusion of fact; were given a roving commission, and the defense raised was excluded. We find sufficient proof to support the giving of this instruction. There was circumstantial evidence that defendant did the wedging, and at defendant's request a circumstantial evidence instruction was given. The other objections are hypertechnical and insubstantial. The evidence showed and the instruction submitted the four requisite elements of an attempt to commit a crime: intent to commit a crime, an overt act toward its commission, failure of consummation and apparent possibility of commission, referred to in State v. Wright, 342 Mo. 58, 112 S.W.2d 571, 573[5].

■ Defendant's next point relates to the exclusion of evidence. There was a

phone booth "inches" from the doorway and a foot and a half from the door itself. Hutter's employee Thomas, while cleaning the store, observed a man in the phone booth at about 12:30 a. m. who was there for more than half an hour. Thomas also saw a man on the parking lot next to the store, standing next to a metal panel truck (not defendant's truck), when Thomas left at 1:30 a. m. Evidence was offered but excluded that the phone coin-plate in the booth had been considerably damaged and that tools of similar nature to those found in the doorway were found in the phone booth; that the damage done to the phone booth could not have been done by any of the tools found in the phone booth, and that the only tool found in the area that could have done the damage to the coin-plate was the punch found in the doorway. This evidence was offered on the theory that as a part of the res gestae it showed that another person than defendant, in the area of the doorway in possession of tools, tampered with the phone, and that from this the jury could have believed that someone other than defendant left the tools in the doorway—that someone else had the opportunity to do the act charged against defendant—thus raising a reasonable doubt of defendant's guilt. This evidence was properly excluded on the question of this defendant's guilt or innocence. "In a word, evidence tending to prove that another person had an opportunity, merely, to commit the burglary, constituted no defense. * * * Evidence that one person had an opportunity to commit the crime would not exculpate defendant, who also had the opportunity, and committed the crime." State v. Yandle, 166 Mo. 589, 66 S.W. 532.

■ Next, defendant claims error "in allowing the jury to rule on a question of law whether or not witness George Keck would answer a question." The verdict was received on March 22. On April 2 defendant was given an extension of time, to May 1, to file a motion for new trial. Defendant filed his motion on May 1, but the foregoing point was not raised in the motion filed May 1. Notwithstanding the court had no power to further extend the time for filing a motion for new trial, Sup.Ct. Rule 27.20(a), and notwithstanding the court did not authorize the filing of any supplemental motion, defendant on May 11 filed what he denominated "Amendments to defendant's motion for new trial," raising this new point. The trial court had no power to entertain such a supplemental motion for new trial, State v. Clark, Mo.Sup., 277 S.W.2d 593, and the questions presented therein were not properly preserved for appellate review. State v. Townzell, Mo.Sup., 286 S.W.2d 785.

■ Finally, defendant claims error in admitting in evidence a crowbar found lying in the back of the truck which defendant drove to the scene, parked in a lot at the side of the building. Defendant says there was no connection between the crowbar and the crime charged, and admitting the crowbar in evidence prejudiced defendant "since the crowbar is commonly considered as a burglar tool." Where the evidence shows that accused was in the vicinity of the scene of a burglary, or an attempted burglary, about the time of its commission, evidence that he was in possession of or had access to burglarious tools with which the crime was or might have been committed is competent, if under the particular facts of the case the tools (or weapons) are sufficiently connected with accused and the crime to become relevant and have some probative value and if they bear on the question of intent. State v. Lindner, Mo.Sup., 282 S.W.2d 547; State v. Smith, 357 Mo. 467, 209 S.W.2d 138; Annotation 143 A.L.R. 1199, and cases cited; 20 Am.Jur. Evidence, § 246, p. 239, § 273, p. 260, § 401, p. 361; 22A C.J.S. Criminal Law, § 611, p. 418, § 712, p. 956; Liakas v. State, 161 Neb. 130, 72 N.W.2d 677, and cases cited, 1. c. 684; State v. Harless, 249 Iowa 530, 86 N.W.2d 210[4]. The opened-up box of tools in the cab of the truck, the punch and chisel wedged under the door, by which the aperture under the door could have been enlarged to the fullest extent to accommodate

the prongs of a crowbar, plus the easy availability of the crowbar, all go together to show that defendant had the means to commit the offense of burglary, and the evidence of the crowbar under these circumstances was a circumstance for the jury to consider, on the question of intent.

No error appearing, the judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All the Judges concur.